UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
- - - - - - - - - - - - - - - - - - - - - - - - - X

UNITED STATES OF AMERICA,

    - against -

VINCENT BADALAMENTI,

- - - - - - - - - - - - - - - - - - - - - - - - - X

**MEMORANDUM**
**AND ORDER**

12 CR 50 (S-1) (CBA)

POLLAK, M.J.:

On January 27, 2012, a 14-count superseding grand jury indictment was unsealed that charged defendant Vincent Badalamenti, along with five other alleged members and associates of the Bonanno Organized Crime Family (the "Bonanno Family"), with engaging in racketeering, and racketeering conspiracy over a period of time spanning from January 1, 1999 through November 21, 2011. Among the underlying predicate acts charged in the Superseding Indictment, there are numerous acts of violence alleged, including 7 separate predicate acts of extortionate extension and collection of credit and extortion conspiracy, in violation of 18 U.S.C. § 1962, and Hobbs Act extortion and extortion conspiracy, in violation of 18 U.S.C. § 1951(a), as well as predicate acts of gambling and marijuana distribution conspiracy. Mr. Badalamenti is charged with three predicate racketeering acts: (1) extortionate extension and collection of credit conspiracy, extortionate extension and collection of credit, state law extortion conspiracy, and state law extortion against John Doe #1 between January 1, 1999 and December 31, 1999; (2) Hobbs Act extortion conspiracy, Hobbs Act extortion, state law extortion conspiracy, and state law extortion against John Doe #2 between January 1, 1999 and December 31, 1999; and (3) extortionate extension and collection of credit conspiracy, extortionate extension and collection of credit, state law extortion conspiracy, and state law extortion against John Doe #4 between January 1, 2009 and September 7, 2011. (S-1[1] ¶¶ 18-31, 35-41).

---

[1] Citations to "S-1" refer to the Superseding Indictment in United States v. Badalamenti, et al., 12 CR 50(S-1).

1

Badalamenti is charged in the Superseding Indictment with being a member of the administration of the Bonanno crime family, at various times serving as captain, acting captain, soldier and associate. According to the government's Memorandum dated January 27, 2012, Badalamenti is the "highest-ranking member [of the family] at liberty. . . wield[ing] day-to-day control over all other Bonanno members and associates who are at liberty." (Gvt Mem.[2] at 14). Several confidential sources are expected to testify that Badalamenti rose through the ranks following his induction into the family in the late 1990s, early 2000s, to now become the "Bonanno family's ruling administration" (id. at 15) – its acting "street boss." (Tr.[3] at 20). In addition to alleging that Badalamenti is responsible for managing the organization and directing others to conduct criminal activities on behalf of the Bonanno family, the Superseding Indictment charges Badalamenti with four substantive extortion acts, the most recent of which occured in 2009.

At Mr. Badalamenti's initial appearance, the Court issued a temporary order of detention. On February 13, 2012, Badalementi appeared before this Court seeking to be released and proffering a proposed bond based on the posting of his and his wife's home, valued at over $1 million, his sister's home, which has a value of $600,000, and the signatures of his wife and his two sisters as sureties on the bond. (Id. at 17). The government has moved for detention on the grounds that Badalamenti is a danger to the community and a risk of flight, and that there are no conditions or combinations of conditions that would guarantee the safety of the public were he to be released on bail.

## BAIL REFORM ACT

Under the Bail Reform Act, 18 U.S.C. § 3156(a)(4) (the "Act"), courts are directed to "impose the least restrictive bail conditions necessary to protect the safety of the community and

---

[2] Citations to "Gvt Mem." refer to the Memorandum of Law in Support of the Government's Motion for Permanent Orders of Detention, dated January 27, 2012.
[3] Citations to "Tr." refer to the transcript of the bail hearing held before this Court on February 13, 2012.

2

reasonably assure the defendant's appearance at trial." United States v. Cicale, No. 06 CR 285, 2006 WL 2252516, at *1 (E.D.N.Y. Aug. 7, 2006) (citing 18 U.S.C. § 3142(c)(1)(B)); United States v. Cantarella, No. 02 CR 307 (S-2), 2002 WL 31946862, at *1 (E.D.N.Y. Nov. 26, 2002) (citing 18 U.S.C. § 3142(c)(1)(B)). Among the factors to be considered in making the bail decision, the court is required to consider: "1) the nature and circumstances of the offenses charged; 2) the weight of evidence; 3) the history and characteristics of the defendant; and 4) the nature and seriousness of the danger to any person or the community that would be posed by the defendant's release." United States v. Cantarella, 2002 WL 31946862, at *1 (citing 18 U.S.C. § 3142(g)); see also United States v. Cicale, 2006 WL 2252516, at *2 (citing 18 U.S.C. § 3142(g)).

If the Court determines that "the government has established the defendant's dangerousness by clear and convincing evidence," and there is "no condition or combination of conditions [that] will reasonably assure . . . the safety . . . of the community," United States v. Ferranti, 66 F.3d 540, 542 (2d Cir. 1995); 18 U.S.C. § 3142 (e), (f)(1)(A), the Bail Reform Act authorizes the Court to order detention. As the Second Circuit noted in United States v. Colombo, in passing the Bail Reform Act, "Congress has expressed its concern about 'the growing problem of crimes committed by persons on release' and the 'small but identifiable group of particularly dangerous defendants as to whom neither the imposition of stringent release conditions nor the prospect of revocation of release can reasonably assure the safety of the community.'" 777 F.2d 96, 99 (2d Cir. 1985) (quoting S. Rep. No. 225, 98th Cong., 1st Sess., at 6-7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. at 3182, 3188-89).

The government has the burden of proving danger to the community by "clear and convincing evidence."[4] United States v. Chimurenga, 760 F.2d 400, 405 (2d Cir. 1985). (quoting S. Rep. No. 225, 98th Cong., 1st Sess., at 6-7 (1984), *as reprinted in* 1984 U.S.C.C.A.N. at 3182, 3188-89). Thus, under the Act, a "court may order a defendant detained

---

[4] A finding that a defendant is a risk of flight need only be shown by a preponderance of the evidence. See United States v. Jackson, 823 F.2d 4, 5 (2d Cir. 1987); United States v. Cicale, 2006 WL 2252516 at *2.

3

pending trial if he has been charged with a 'crime of violence' and the government can show by 'clear and convincing evidence' that 'no condition or combination of conditions will reasonably assure. . .the safety of the community.'" United States v. Ciccone, 312 F.3d 535, 541 (2d Cir. 2002) (quoting 18 U.S.C. § 3142(e), (f)).

A crime of violence is defined in the Bail Reform Act as "(A) an offense that has [as] an element of the offense the use, attempted use, or threatened use of physical force against the person or property of another; (B) any other offense that is a felony and that, by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense." 18 U.S.C. § 3156(a)(4). It is undisputed that extortion by its very nature is a crime of violence under the Bail Reform Act, 18 U.S.C. § 3142(f), in that extortion involves threats of force and intimidation to collect monies and to force others to engage in acts in response to those threats. See United States v. Defede, 7 F. Supp. 2d 390, 396 (S.D.N.Y. 1998) (noting that "[t]he offense, extortion, is a crime of violence both because it is so defined by statute and because its completion often involves the threat of physical harm").

The Second Circuit has held that "[l]eaders of criminal gangs who direct the commission of violent crimes by others can be detained prior to trial under the circumstances prescribed in the Act." United States v. Colombo, 777 F.2d 96, 98 (2d Cir. 1985). Thus, the defendant need not be shown to have personally engaged in acts of physical violence before being found to be a danger to the community. Id.; United States v. Defede, 7 F. Supp. 2d at 395 (holding that the "threat inherent in [defendant's] continued liberty need not stem directly from the threat of violent acts by him"). As the court noted in United States v. Bellomo, "the leader of a criminal enterprise with the ability to order members of that enterprise to engage in criminal actions may be a danger to the community despite the lack of evidence that he directly participated in many, if any, of the charged crimes." 944 F. Supp. 1160, 1166 (S.D.N.Y. 1996) (citing United States v. Orena, 986 F.2d 628, 632 (2d Cir. 1993)). The courts have also made it clear that "the

4

dangerousness of the defendant [is not] determined solely by looking at the acts charged in the indictment. There is no requirement of a nexus between the charged conduct and the basis of a court's conclusion that a defendant is a serious danger to the community. . . .This Court therefore may look beyond the charged conduct to assess the degree of danger that the defendant poses." Id. at 1166; accord United States v. Defede, 7 F. Supp. 2d at 395 (holding that the threat to the community "need [not] arise from the charged offenses").

Although there is no *per se* rule requiring detention of leaders of organized crime families charged with racketeering-related offenses, see United States v. Ciccone, 312 F.3d at 543, and "[t]he Court must make a careful and individualized examination of the quality and quantity of the evidence supporting the government's proffer," United States v. Cirillo, No. 05-CR-212, slip op. at 6 (E.D.N.Y. 2005), aff'd,149 Fed. Appx. 40 (2d Cir. 2005) (citing United States v. Ciccone, 312 F.3d at 543), nevertheless, defendants are routinely detained as dangers to the community when the government proffers clear and convincing evidence that they are high-ranking members of an organized crime family, involved in directing crimes of violence.[5] See United States v. Cirillo, No. 05 CR 212, slip op. (ordering the detention of a Genovese crime family member detained as a danger to the community, based partly on government's proffer

---

[5] At the oral argument held on February 13, 2012, defendant claimed that there is significant precedent in this Circuit for releasing alleged high-ranking members of organized crime families on bail prior to their trials. (See Tr. at 13). Defendant claimed that he had 15 cases that supported this proposition, but he only provided this Court with 11 citations. Two of those cases actually supported the government's arguments for detention. Thus, the courts in United States v. Orena, 986 F.2d 628, 630-33 (2d Cir. 1993), and United States v. Bellomo, 944 F. Supp. 1160 (S.D.N.Y. 1996) actually ordered that the defendant be detained. Two of the other cases defendant cited are easily distinguished. In United States v. Gallo, 653 F. Supp. 320 (E.D.N.Y. 1986), the court ordered defendant released on bail because even though defendant was charged with threats against witnesses, the government had failed to satisfy the clear and convincing standard necessary to show that the defendant was actually responsible for these threats. In another case cited by defendant – United States v. Notarantonio, 97 CR 1062 (E.D.N.Y. 1997) – the court initially ordered defendant detained pending trial but only reversed its decision later when defendant demonstrated changed circumstances. Defendant here has not presented circumstances that warrant his release. Defendant also cited cases in which the district court released the defendant charged with serious crimes who also allegedly had ties to organized crime families, including James Failla (No. 93 CR 294 (E.D.N.Y. 1993)), Anthony Spero (No. 99 CR 520 (E.D.N.Y. 1999)), and Robert Attanasio (No. 03 CR 1382 (E.D.N.Y. 2003)). These decisions, some of which are fairly old, do not appear to have been published and accordingly, the reasoning of the courts in those cases is unavailable to this Court.

that cooperating witnesses would name defendant as acting boss); United States v. Gotti, 219 F. Supp. 2d 296, 299-300 (E.D.N.Y. 2002), aff'd, United States v. Ciccone, 312 F.3d at 543 (ordering the acting boss of the Gambino crime family detained as danger to the community, based in part on detailed proffer, including recorded conversations, establishing his role in directing extortion activities, despite the absence of any evidence of the defendant's personal involvement in any crimes of violence); United States v. Agnello, 101 F. Supp. 2d 108, 116 (E.D.N.Y. 2000) (ordering acting boss of the Gambino crime family detained as danger to the community); United States v. Defede, 7 F. Supp. 2d at 395 (ordering Luchese crime family acting boss detained as danger to the community, based in part on proffers of his frequent visits to a certain social club, a highly suspicious recorded conversation, and a cooperating witness likely to have personal knowledge of defendant's status); United States v. Salerno, 631 F. Supp. 1364, 1375 (S.D.N.Y. 1986), order vacated, 794 F.2d 64 (2d Cir.), order reinstated, 829 F.2d 345 (2d Cir. 1987) (ordering Genovese family acting boss detained as danger to the community, partly based on proffer of "unimpeachable tape evidence" that defendant was conducting the business of the enterprise).

## DISCUSSION

A. Danger to the Community

   1. Nature and Circumstances of the Offenses Charged

In analyzing the danger posed by defendant Badalamente, the Court first considers the nature of the crimes charged. See United States v. Cicale, 2006 WL 2252516, at *2. The January 27, 2012 Superseding Indictment alleges that the Bonanno Family is an organized criminal group that constitutes an "enterprise" as that term is defined in 18 U.S.C. § 1961(4) (S-1 ¶ 1), with the primary purpose of generating money for its members and associates. (Id. ¶ 8). The Indictment further alleges that members and associates of the Bonanno crime family engaged in various criminal activities and used threats of economic injury and physical violence,

6

including murder, to further the objectives of the enterprise. (Id.) Badalamenti is claimed to have sworn an oath to commit acts of violence, including murder, in furtherance of the aims of the criminal enterprise. (Gvt Mem. at 14).

The January 27, 2012 Superseding Indictment charges defendant Badalamenti with four counts of extortion and extortion conspiracy in addition to charging him with RICO and RICO conspiracy. (S-1 ¶¶ 18-49, 67-70). As noted, extortion is a crime of violence under the Bail Reform Act. 18 U.S.C. § 3142(f). However, defendant contends that he should not be detained because "[h]e's not charged with murder. He's not charged with conspiracy to murder. He's not charged with any activity that caused injury to anyone." (Tr. at 13). Defendant further argues that with respect to two of the three Racketeering Acts of extortion charged in the Indictment, the government was aware of these incidents and took no steps to charge or arrest Badalamenti for over seven years. Defendant argues that these alleged extortions took place between January 1, 1999 and December 31, 1999, and are therefore time-barred by the statute of limitations.[6] (Def.'s Let.[7] at 1). Indeed, defendant argues that the government has known about these two incidents since as early as September 2004, and yet waited until now to charge the defendant. During the time between then and the filing of the current Indictment, Badalamenti was released from jail in 2005 after serving his sentence for another separate extortion charge, spent three years on supervised release, and has not been arrested since. Counsel argues, "It seems to me

---

[6] The fact that the government's charges may be time-barred for purposes of charging them as independent substantive counts does not mean that they cannot serve as predicate acts forming the basis of a RICO charge. RICO charges must be based on at least two acts of racketeering activity within 10 years of each other, one of which must have occurred within five years of the indictment. See 18 U.S.C. § 1961(5); see also United States v. Cain, Nos. 09 CR 0707, 2012 WL 265882, at *11 (2d Cir. Jan. 31, 2012). In demonstrating a pattern of racketeering activity, the government is not limited to the predicate acts charged. United States v. Pizzonia, 577 F.3d 455, 463 (2d Cir. 2009). In contrast to a substantive RICO charge, a RICO conspiracy "is complete, thus commencing the running of the five-year statute of limitations, only when the purposes of the conspiracy have either been accomplished or abandoned." United States v. Yannotti, 541 F.3d 112 (2d Cir. 2008) (internal citation omitted). Consequently, "even if a defendant engaged in predicate conduct that occurred outside of the statute of limitations, that defendant remains liable for RICO conspiracy unless the evidence shows that the conspiracy concluded or he withdrew from that conspiracy more than five years before the indictment." Id.

[7] Citations to "Def.'s Let." refer to the letter submitted to the Court by defendant's counsel on February 13, 2012.

7

that doesn't pretend [*sic*] to be someone who has been living a life of crime with no arrest." (Tr. at 9). As such, defendant argues that the Court should discount the government's claims of danger to the community.

In United States v. Cantarella, the court considered and rejected a similar argument to the one Badalamenti makes here. There, the defendant argued that allegations involving conduct that occurred seven to eleven years ago were irrelevant to the determination of whether he now should be detained as a danger to the community. In ruling that defendant remained a threat to society, the court stated that "[s]uch an argument might bear weight if there were no allegations that Defendant had continued to engage in violent conduct. . . ." 2002 WL 31946862, at *2. However, the indictment alleged additional, more recent acts of violence, portraying defendant as a career criminal. Id. Accordingly, the court ordered him detained. Id.; see also United States v. Salerno, 631 F. Supp. at 1372 (rejecting defendant's argument that government should be precluded from moving for detention in the current case because defendant had been previously indicted and the government did not move for detention in that case, despite already having knowledge of the alleged facts upon which it based its current detention motion).

With respect to the third predicate act that allegedly occurred within the statute of limitations in 2009, defendant argues that, essentially, the charge is based on a $5,000 loan to someone who is also a member of organized crime. (Tr. at 5). Badalamenti was eventually repaid $3,500, and the alleged crime is that Badalamenti then ordered the collection of the remaining $1,500 through threats of violence. (Id.) Defendant argues that for Badalamenti, who owns a home, has a wife and two children, and manages four buildings from which he collects rents on a monthly basis, to "jeopardize all this to try and collect $1,500. . .is just quite frankly absurd." (Id. at 11-12).

In response, the government contends that as the acting street boss of the Bonanno crime family, Badalamenti is not only charged with engaging in a pattern of loansharking going back to 1999, he is also charged with being a leader responsible for directing other members and

8

associates of the Bonanno crime family to engage in extortion, extending and collecting on loans on behalf of Badalamenti and the enterprise. (Tr. at 25-26).

Like the defendant in United States v. Cantarella, the government alleges that Badalamenti has been engaged in extortion and loansharking as far back as 1999, through the date of his last conviction, through the 2009 charge, and up until today. Here, the defendant is not only charged with engaging in crimes of violence, one as recently as 2009; he is also facing charges that he is a leader of a violent criminal organization.

### 2. Weight of the Evidence Against Badalamenti

Turning to the next prong of the test – the weight of the evidence – the parties disagree as to the strength of the government's case against Badalamenti.

According to the government's submission to this Court, there are at least three cooperating witnesses who will testify as to Badalamenti's position within the Bonanno crime family. All of these witnesses are former high-ranking members, including a former acting captain of the Bonanno family, who will testify about Badalamenti's induction into the family, and his promotion through the ranks to the ruling administration. (Gvt Mem. at 15). Their testimony, according to the government, has been corroborated by law enforcement surveillance of the defendant at a "mob social club" that he controls, meeting with various members and associates of not only the Bonanno family, but of other families as well. (Id.) A fourth cooperating witness will testify that in connection with Badalamenti's loansharking business, the defendant, in or about 1999, extended a $50,000 loan to this witness at the rate of 1.5% per week. This loan was apparently made in connection with an attempt to dissolve this witness's association with the Colombo crime family, and when it appeared that the Colombos would not release the witness, Badalamenti threatened the witness, demanding that the loan be repaid. (Id. at 19-20).

This same witness will testify that in connection with the second Racketeering Act, Badalamenti asked him to "shake down" several restaurants and bars in Manhattan and Brooklyn, demanding payment from the owners on Badalamenti's behalf. (Id. at 20). On the defendant's orders, this witness and another individual took over a bar when the owner failed to pay back a debt. (Id.)

A fifth cooperating witness will testify about the third and most recent racketeering act in which Badalamenti sent three Bonanno family soldiers – Anthony Calabrese, Arthur Tarzia, and acting captain Vito Balsamo – to intimidate this fifth witness into paying the debt. (Id.) The witness, acting at the direction of the government, later wore a recording device and attempted to pay the money back to Badalamenti. According to Badalamenti, the money had already been paid on behalf of the witness by another individual. (Id.) This conversation, captured on tape, provides corroboration for the witness' testimony and the 2009 extortion charge.

Witnesses for the government will also testify that Tarzia and Robert Bilello regularly collected loanshark payments on behalf of Badalamenti, and that in July 2011, law enforcement agents surveilled Badalamenti at Bilello's wake, along with Tarzia and co-defendants Balsamo and Calabrese. (Id. at 16-17). Other surveillances conducted by the agents have placed Badalamenti in the company of Balsamo, Tarzia, and Anthony Graziano as recently as October 18, 2011. (Id.) According to the government, "multiple cooperating witnesses" will testify that Badalamenti is the acting street boss of the Bonanno crime family, and that he has numerous "members and associates at his disposal, both to engage in witness tampering and to continue to engage in the crimes that he's been engaging in for the past decade." (Tr. at 25). Not only will these witnesses testify that he collects money from people, but the government has a recorded conversation confirming Badalamenti's role in the family. (Id.)

In responding to the government's evidence, counsel for defendant simply asked, "How do I defend against that in an argument? How do I do that?"

10

It is well-established that the government may proceed by proffer in making its case for detention under the Bail Reform Act. See 18 U.S.C. § 3142(f)(2); see also United States v. LaFontaine, 210 F.3d 125, 130-31 (2d Cir. 2000); United States v. Ferranti, 66 F.3d 542 (2d Cir. 1995); United States v. Martir, 782 F.2d 1141, 1145 (2d Cir. 1986). Although defendant's counsel challenged the government's proffer by asking if there were witness statements or if they wanted to put their agent on the stand to testify, when the Court offered to put the hearing over to require the government to put on an agent, counsel responded, "I don't want to put it over. . .I want him out today." (Tr. at 33). Accordingly, the Court has considered the strength of the government's evidence based on the government's Memorandum and the representations of the government's attorneys at the hearing. As detailed below, the Court finds the Government's evidence to be strong.

### 3. History and Characteristics of Badalamenti

Under the Bail Reform Act, courts considering a defendant's "history and characteristics" must consider the defendant's "physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings." 18 U.S.C. § 3142(g).

Here, Badalamenti was previously convicted of extortion in September 2003, in violation of 18 U.S.C. § 894(a)(1), and sentenced to 15 months in prison, with three years of supervised release. After his release in 2005, the government alleges that he engaged in additional acts of extortion, making him a "recidivist." (Gvt Mem. at 17). The defendant argues that the Court should take into consideration the fact that at the time of his earlier arrest, Badalamenti was released on bail and made all of his court appearances. While this weighs in favor of the defendant's release, the Court notes that according to the government, Badalamenti's position in the Bonanno crime family was not then what it is today. As acting street boss, Badalamenti now

11

runs the day-to-day operations of the enterprise, and different considerations relating to his continued direction of other members in committing crimes must be evaluated.

### 4. Nature and Seriousness of the Danger Posed by Badalamenti's Release

Turning to the fourth factor – "the nature and seriousness of the danger to any person or the community that would be posed" by defendant's release – this factor "'essentially directs the court to predict, based on an assessment of the charges against the defendant, and the defendant's history and characteristics, whether he would pose a harm to the community at large or to any specific individuals.'" United States v. Cicale, 2006 WL 2252516, at *6 (quoting United States v. Gotti, 358 F. Supp. 2d 280, 287-88 (S.D.N.Y. 2005)).

First, the acts alleged to have been committed – extortion and extortion conspiracy – are clearly acts of violence. Second, because of his rank within the family, he commands the ability to order others to engage in crimes on his behalf and on behalf of the family. See United States v. Salerno, 631 F. Supp. at 1375 (noting that the activities of a criminal enterprise do not cease upon the arrest of its principals and the illegal businesses require constant attention and protection, which provides "a strong incentive . . . to continue business as usual. When business as usual involves threats, beatings, and murder, the present danger such people pose in the community is self-evident). Thus, the Court finds, based on all the circumstances, that there is a clear danger that Badalamenti will continue to pose a harm to the community if released.

### 5. The Government Has Satisfied Its Burden

In reviewing the government's proffer, the Court finds, by clear and convincing evidence, that Badalamenti has been charged in the Superseding Indictment with crimes of violence – extortion. The fact that the most recent charge relates only to the collection of a $1,500 debt does not alter the fact that the Indictment charges Badalamenti with sending three individuals to collect this amount with threats of violence. Similarly, the fact that two of the

12

predicate acts extend back to 1999 does not change the fact that Badalamenti is alleged to have engaged in acts of extortion which, according to the government's proffer, continued until his recent arrest.

Even if he had not been charged with personally participating in these acts of violence, the government has presented convincing evidence, which has not been controverted, that Vincent Badalamenti is the acting street boss of the Bonanno crime family, with day-to-day control over its members and associates, and as such poses a serious danger to the community.[8] The government's evidence includes: (1) the statements of several cooperating witnesses that Badalamenti is the acting street boss of the family, having risen in the ranks during the last 20 years; (2) the fact that he has been observed on numerous occasions meeting with various members and associates of the Bonanno crime family and other crime families in a manner common for leadership figures in organized crime; and (3) the statements of several other cooperating witnesses linking Badalamenti to not only the extortions charged in the indictment but with an ongoing loansharking business for Badalamenti's benefit and that of the Bonanno crime family, with evidence that this was a routine practice to use threats of violence to collect such debts. These are all factors that the courts have considered in finding that a defendant is an acting street boss of a crime family. See, e.g., United States v. Ciccone, 312 F.3d at 538; United States v. Defede, 7 F. Supp. 2d at 395.

In United States v. Ciccone, the Second Circuit upheld the detention order of this Court, rejecting the defendant's argument that the court should only consider the predicate acts ascribed to him in the indictment and not the objects and means of the enterprise as a whole. 312 F.3d at

---

[8] Defendant argues that when as here the predicate act was committed twelve years ago, "it seems like it's just a Talisman. They say he's a member of the Bonanno crime family and then he must be detained." (Tr. at 8). To the extent that defendant seems to be raising an argument that he is being detained solely on the basis of his status, that is not the case. See United States v. Ciccone, 312 F.3d at 542-43 (rejecting the notion of a *per se* rule of detention for leaders or acting leaders of a crime family). Instead, the Court has conducted a review of the quality and quantity of the evidence, as well as Badalamenti's arguments in rebuttal, and has concluded that the government met its burden of proving that he poses a danger to the community for which no conditions of bail would provide adequate protection. Id. at 543.

542. Indeed, in that case, the Second Circuit explicitly held that "Gotti need not be named in the predicate act charged in the indictment to be guilty of a racketeering conspiracy that includes that predicate act." Id.; United States v. Colombo, 777 F.2d 96, 98 (2d Cir.1985) (holding that the Bail Reform Act does not require "that the defendant himself commit acts of physical violence as a condition precedent to a detention order"). Furthermore, the evidence in this case is arguably stronger than what the government presented in United States v. Defede. See 7 F. Supp. 2d at 392-9. There, the court found that defendant was the acting boss of the Luchese family based on the government's proffer of (1) testimony from a former acting boss of the family about when defendant became "made" and what his responsibilities included; (2) testimony from "a number of as yet unidentified confidential sources" who would identify defendant as acting boss; (3) a "poor quality recording" of defendant and an incarcerated made member discussing criminal business; (4) circumstantial evidence linking defendant to extortion payments; and (5) testimony from law enforcement officers who observed defendant meeting with members of the Luchese family "in a manner common for leadership figures in organized crime." Id.

Moreover, while this Court is not "free to detain a defendant by arbitrarily crediting an unpersuasive government proffer over an unsubstantiated proffer of denial by the defendant," id. at 394, this Court finds that, contrary to the defendant's assertions, the government has proffered a convincing case against Badalamenti. The Court finds that the evidence clearly and convincingly establishes that by his own actions, Badalamenti has earned a leadership position within the Bonanno crime family, and because of the authority inherent in that position, he poses a danger for which there can be no combination of conditions sufficient to prevent him from continuing in that role even if placed under house arrest. See United States v. Orena, 986 F.2d at 632-36 (rejecting the argument that stringent conditions of release, including house arrest, electronic surveillance, and monitoring by pretrial services, would suffice to protect the public, noting "[t]hese conditions would at best 'elaborately replicate a detention facility without the

confidence of security such a facility instills'") (quoting United States v. Gotti, 776 F. Supp. 666, 672 (E.D.N.Y. 1991)). "[I]t is well established that persons who hold [Peter Gotti's] status routinely engage in conduct that is a menace to public safety. The argument thus is based not on the status, but on the inference that a person in [Gotti's] position is quite likely to engage in dangerous conduct – just as one reasonably could infer that one holding the position of major league baseball pitcher is entirely likely to hurl a small white object in the direction of home plate." United States v. Defede, 7 F. Supp. 2d at 391 n.4. Since there does not appear to be a dispute that someone in Badalamenti's role within an organized crime family has substantial power and the authority to supervise the criminal activities of the family, including acts of violence, the threat of Badalamenti's continued liberty stems from his ability to continue to direct, plan, order, and supervise criminal activity even if he himself may not be personally involved.

In addition, the Court has considered that, unlike some organized crime figures that have appeared before this Court, this is not Badalamenti's first experience with federal criminal charges. He has been previously convicted of the same type of crime for which he stands charged today.[9] Accordingly, this Court finds that for purposes of determining bail in this case, the government has established by clear and convincing evidence that Badalamenti is a day-to-day acting leader of the Bonanno crime family, who controls others through the use of violence and threats of violence, and who engages in extortion. Thus, the Court finds that there are no conditions or combination of conditions that will adequately and reasonably ensure the safety of the community.

Defendant's counsel argues that the lengthy period of pretrial incarceration anticipated in this case violates his right to due process and justifies a decision to release him on bail.

---

[9] The Court notes that in United States v. Cirillo, No. 05 CR 212, slip op., United States v. Gotti, 219 F. Supp. 2d 296, United States v. Agnello, 101 F. Supp. 2d 108, United States v. Defede, 7 F. Supp. 2d 390, and United States v. Salerno, 631 F. Supp. 1364, the court found that organized crime defendants merited detention as a danger to their communities even when they were not violent crime recidivists.

Although the court has designated this as a complex case based on the government's representation that there are numerous wiretaps and other evidence, and it is clear that "[t]he length of a defendant's pretrial detention may, of course, be challenged under the due process clause," United States v. Orena, 986 F.2d at 630, as the court in United States v. Colombo, noted, "[a]t this stage of the proceedings, this determination, both as a statutory and constitutional matter, is premature." 777 F.2d at 100. This consideration alone and the difficulties counsel may have in meeting with his client are not factors that are to be considered in determining bail. See United States v. Orena, 986 F.2d at 630 (holding that ". . .there is no statutory basis for the conclusion that the length of a pretrial detention warrants the granting of bail where there has been a finding of danger to the community"). Thus, while defendant is always free to raise this issue at a later date, this Court declines at this early stage of the proceedings to address the issue of whether a delay in the trial warrants Vincent Badalamenti's release.

B.  Risk of Flight

The government also moves for the detention of defendant Badalamenti on risk of flight grounds. The government asserts that Badalamenti and his co-defendants face imprisonment for up to 20 years on each of the charged counts, and that "the significant sentences faced by the defendants give them a substantial incentive to flee. (Gvt Mem. at 52 (citing United States v. Dodge, 846 F. Supp. 181, 184-85 (D. Conn. 1994) (holding that the possibility of a "severe sentence" heightens the risk of flight))). By contrast, the defendant has proposed a bail package consisting of an offer of security in the form of various properties owned by family members[10] and the signatures of financially responsible suretors. In addition, defendant emphasizes his ties to the community. Specifically, he has a wife, two children, a house with a mortgage, ownership

---

[10] Defendant estimates that, after accounting for outstanding mortgages, these properties are collectively valued at approximately $1.6 million. (See Tr. at 17).

16

of four buildings from which he collects rent, and a bagel store, in which he owns a partial stake and sometimes works. (Tr. at 11-12).

However, the Second Circuit has held that where a defendant poses a danger to the community, even stringent conditions beyond those proposed by defendant here, such as home detention and electronic monitoring, are insufficient to protect the community. See United States v. Domo, 275 Fed. Appx. 35, 37 (2d Cir. 2008) (reversing district court's decision to release Colombo Family members and associates, given their violent criminal acts, stating, "the idea that 'specified conditions of bail protect the public more than detention is flawed' because. . .'[t]hese conditions would at best elaborately replicate a detention facility without the confidence of security such a facility instills'") (quoting United States v. Orena, 986 F.2d at 632). Among the concerns expressed by courts in rejecting bail packages even with stringent monitoring is that in cases involving alleged organized crime associates, these conditions can be easily circumvented, see United States v. Masotto, 811 F. Supp. 878, 884 (E.D.N.Y. 1993), and can not effectively prevent the defendant from tampering with witnesses or directing others to engage in such conduct. See United States v. Gotti, No. S8 02 CR 743, 2004 WL 2274712, at *3 (S.D.N.Y. Oct. 7, 2004); United States v. Gotti, No. 02 CR 606, 2002 WL 31946775, at *6 (E.D.N.Y. June 10, 2002). Although defendant Badalamenti has not been charged with witness tampering, other Bonanno Family members in the past have been convicted of such conduct, demonstrating that the organization has employed such tactics in the past. See, e.g., United States v. Wong, 40 F.3d 1347, 1376-77 (2d Cir.1994) (noting that organization's "demonstrated willingness" to obstruct justice by intimidating and killing cooperating witnesses supported empaneling an anonymous jury).

Accordingly, even if the Court were to find that the proffered bail package is sufficient to ensure defendant's presence in court, the Court has determined that the government has established by clear and convincing evidence that due to defendant's dangerousness, no combination of conditions will secure the community's safety if defendant is released on bail.

## CONCLUSION

After a thorough review of the evidence proffered, the Court finds that the government has established that the defendant poses a danger to the community based on his being charged with crimes of violence, the strength of the government's evidence against him, his prior criminal record, including an admission of the use of threats, and the fact of his close association with members of a violent organized crime family. Based on these elements, the Court finds that the government has established by clear and convincing evidence that Vincent Badalamenti would pose a danger to the community if released and that there are no conditions or combination of conditions that would reasonably ensure the safety of the community were he to be released.

Accordingly, the Court Orders the defendant Badalamenti detained pending trial.

**SO ORDERED.**

Dated: Brooklyn, New York
February 15, 2012

Cheryl L. Pollak
United States Magistrate Judge
Eastern District of New York