UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

```
------------------------------X    Docket#
UNITED STATES OF AMERICA,       :  12-cr-50(CBA)(CLP)
                                :
     - versus -                 :  U.S. Courthouse
                                :  Brooklyn, New York
VINCENT BADALAMENTI,            :
            Defendant           :  February 13, 2012
------------------------------X
```

TRANSCRIPT OF CRIMINAL CAUSE FOR
DETENTION HEARING
BEFORE THE HONORABLE CHERYL L. POLLAK
UNITED STATES MAGISTRATE JUDGE

**A   P   P   E   A   R   A   N   C   E   S:**

**For the Government:**          **Loretta E. Lynch, Esq.**
                                 United States Attorney

                           BY:  **Nicole Argentieri, Esq.**
                                 **Stephen Frank, Esq.**
                                 Assistant U.S. Attorney
                                 271 Cadman Plaza East
                                 Brooklyn, New York  11201


**For the Defendant:**           **Ronald Fischetti, Esq.**
                                 747 Third Avenue
                                 New York, New York 10017



**Transcription Service:**       **Transcriptions Plus II, Inc.**
                                 3859 Tiana Street
                                 Seaford, N.Y.  11783
                                 Transcriptions2@verizon.net

Proceedings recorded by electronic sound-recording,
transcript produced by transcription service

2

**Proceedings**

1          THE CLERK:  Criminal Cause for Detention

2    Hearing, case number 12-cr-50, United States v. Vincent

3    Badalamenti.

4          Counsel, please state your name for the record.

5          MS. ARGENTIERI:  Nicole Argentieri and Steven

6    Frank.

7          Good afternoon, Judge.

8          THE COURT:  Good afternoon.

9          MR. FISCHETTI:  Ronald Fischetti, representing

10   the defendant, your Honor.

11         THE COURT:  Good afternoon.

12         Mr. Badalamenti, I take it that you understand

13   English.

14         THE DEFENDANT:  Yes.

15         THE COURT:  Okay.  If at any point something is

16   said that you don't understand, please let me know.  All

17   right?

18         What are we here for today?

19         MS. ARGENTIERI:  Judge, the government had

20   submitted a motion for detention based on the fact that

21   we believe the defendant is both a danger to the

22   community and a risk of flight.  And when the defendant

23   was arraigned on the indictment, I believe Mr. Fischetti

24   had this put on to contest that because Judge Azrack at

25   the initial appearance ordered him detained.

3

**Proceedings**

1          THE COURT:  Okay.  So --

2          MS. ARGENTIERI:  And I had sent the Court a

3  copy of our detention memorandum.

4          THE COURT:  I have it.  I have it.  I just

5  wasn't quite sure on whose motion we were here.

6          MS. ARGENTIERI:  It's the defense's motion.

7          THE COURT:  Okay.

8          MR. FISCHETTI:  Judge, just one small fact, my

9  co-counsel, Mr. Franz tells me, as I recall Judge Azrack

10  did not order him detained.  What we did is we

11  adjourned --

12          THE COURT:  A temporary order of detention.

13          MR. FISCHETTI:  Yes, I don't think it really

14  makes --

15          MS. ARGENTIERI:  That's correct, Judge.  I

16  misspoke.

17          MR. FISCHETTI:  I really don't think it's any

18  difference but she did not make a finding.

19          THE COURT:  Okay.

20          MR. FISCHETTI:  Your Honor, may I be heard with

21  regard to that?

22          THE COURT:  Please.

23          MR. FISCHETTI:  Thank you, Judge.  Some of this

24  I know your Honor knows but let me say it for the

25  purposes of the record.  Your Honor, this is not a

4

**Proceedings**

1   presumption case under Title 18 3142.  It's not a

2   controlled substance.  It's not a substance under any of

3   the other sections which means as I understand the law,

4   that the government has to prove that he's a danger to

5   the community by clear and convincing evidence.  I think

6   that's the standard and I don't believe that the

7   government has come anywhere close to proving that and I

8   would like to tell you why.

9           As your Honor knows, there are a number of

10  factors that your Honor has to consider before

11  determining that by clear and convincing evidence and

12  among them is the nature of the crime, violence.  It's an

13  extortion case but all extortion cases are violent by

14  statute.  There are those that really are violent where

15  there are beatings and injuries to individuals.

16          The charges in this case are basically two

17  predicate acts that occurred quite some time ago in 1999

18  and one recent one, Judge, which is within the statute of

19  limitations.

20          All those charges, the two predicate acts, the

21  charges are that he loaned some individual $50,000,

22  supposedly with some interest to pay back others and also

23  took over a bar.  Those two actions, and I'll explain

24  that a little further as we get into this argument, would

25  be barred by the statute of limitations since it was over

5

**Proceedings**

1   five years ago.

2           However, there is one charge within the five

3   year statute of limitations and that is basically that he

4   loaned an individual $5,000 and attempted to collect

5   $1,500 having been paid $3,500 by threats and violence.

6   No violence, of course.  No one was injured.  But the

7   important thing I think to note when we're talking about

8   this, this is not extortions of shopkeepers or

9   individuals who he loaned money to.  These -- the one --

10  both of these charges are people who are alleged by the

11  government to be members of organized crime themselves.

12  Both, of course, with records.  Both, of course, I

13  believe are in the program.  One in particular, which

14  from my read in newspaper accounts is going to be or was

15  charged with murder over $1,500.

16          So that's basically the charges in the case.

17  Now, the government has said a number of things during

18  its detention memo which I challenge, your Honor and I

19  want to go into them.

20          Your Honor, Mr. Badalamenti was charged in a

21  crime in -- 2002, was it?

22          THE DEFENDANT:  Yes.

23          MR. FISCHETTI:  -- in 2002.  It was an

24  extortion charge.  In that particular charge, the

25  government argued that he should be detained as they say

6

### Proceedings

1  now, the Court released him with a bracelet, a monitoring

2  device from I believe 10 o'clock in the morning until 10

3  o'clock in the evening and I'll explain why, your Honor.

4  He has a number of businesses.

5          In that particular case, the government argued

6  for the Court that the charges in the case he was facing

7  twenty years in the case and for that reason, he was

8  certainly a risk of flight and indeed, a danger to the

9  community.  I argued then, as I am now, that the very

10  charges although they ay that and there's a twenty-year

11  statutory maximum that he could be sentenced to, were not

12  charges that would incarcerate him or anything like that.

13          In any event, he was charged and his maximum

14  sentence and the sentence that the government argued he

15  could get was twenty years but he pled guilty to that

16  case and he was sentenced to fifteen months on that

17  charge.

18          This particular charge, as the government says

19  in its submission to your Honor -- I want to get the page

20  on this, if I can -- excuse me, Judge -- it states that

21  he is facing on these charges 51 to 63 months.  That's

22  the government's estimate and usually, your Honor, in my

23  experience, the government's estimate is higher than I

24  would see in the guidelines.  In the event Mr.

25  Badalamenti pled, 51 months of course is after trial he'd

7

**Proceedings**

1  be given three months -- three points for acceptance of

2  responsibility and fifteen percent off; he'd actually be

3  facing 32 months in jail.

4          The government said before Judge Amon that this

5  is a complex case and to keep him incarcerated, Judge,

6  for possibly what could be twenty-five or thirty percent

7  of a sentence, I suggest is just wrong and

8  unconscionable.

9          The evidence that we have in this case, Judge,

10 which the government told Judge Amon, consists of over

11 fifty consensual recordings, some of them as long as

12 four, five or six hours.  We have the list of those

13 recordings of the fifty consensual recordings that the

14 government says they have.  They sent us the list of

15 them.  There is one recording of Mr. Badalamenti.  I

16 think that goes to the weight of this case.

17         The other thing that concerns me about this

18 case, Judge, and it really concerns me because it seems

19 to me that the government when they allege that someone

20 is a member, a high-ranking member of an organized crime

21 family as he is alleged to be in the Bonanno crime

22 family, doesn't really matter what the crime is that

23 they're charging, the length of the crime when it really

24 was supposed to have happened as a predicate act which is

25 some twelve years ago, it seems like it's just a

8

### Proceedings

1  Talisman.  They say he's a member of the Bonanno crime

2  family and then he must be detained.

3         Now the detainer statute, your Honor, the

4  pretrial detainer statute which I know and have railed

5  against, list all the reasons why he should be detained

6  and then at the bottom of it, Judge, it says as I recall,

7  nothing in this act shall be used to diminish the

8  presumption of innocence.  However, Judge, it seems to me

9  -- it seems to me, Judge, that when we get to situations

10  like this and we just don't look at the nature of the

11  crime, what he's done in the past and who he is, what

12  family background he has, Judge, that we forget about

13  that.

14         The two predicate acts, Judge, and this I

15  consider extremely important, the two predicate acts that

16  they're talking about occur it appears, sometime before

17  September 2004, okay?  That's the acts that form the

18  predicate in this case.

19         Now those two acts, as I told you, as a

20  predicate, is a $50,000 loan --

21         THE COURT:  I don't have a copy of the

22  indictment.  I'm sorry.

23         MS. ARGENTIERI:  I can pass one up, Judge.

24         THE COURT:  That would be helpful.

25         MS. ARGENTIERI:  I apologize.  It's small.

9

**Proceedings**

1          THE COURT:  That's okay.  I can still read it.

2          MS. ARGENTIERI:  Okay.

3          THE COURT:  Thank you.

4          MR. FISCHETTI:  Judge, I have a much larger

5    copy.

6          MS. ARGENTIERI:  There's also a chart of the

7    indictment on pages 5 and 6 of our detention memo.

8          THE COURT:  Okay.  All right.

9          Go ahead, Mr. Fischetti.

10          MR. FISCHETTI:  Judge, you'll see that these

11   occurrences that they're claiming as the predicate acts

12   which makes this a RICO indictment occurred in 1999 but

13   what I think is important about that, Judge, because the

14   government says in its submission that Mr. Badalamenti

15   has continued his life of crime continually and indeed,

16   as they said in their memo, when he was even released

17   from prison in 2005.

18          Now he was released in 2005, Judge, after

19   serving his fifteen months and after that, he spent three

20   years on supervised release until 2008 and, of course,

21   during that time he was never arrested.  And then from

22   2008 until now, where we are now, he hasn't been arrested

23   except for this crime.  It seems to me that doesn't

24   pretend to be someone who has been living in a life of

25   crime with no arrest.

10

**Proceedings**

1        And with those two charges in 1999, this is

2   what I think is extremely important, the individual who

3   allegedly is the victim of these two crimes has testified

4   in open court and the government acknowledges or must

5   acknowledge that they knew about these crimes in 2004

6   because there are 302s, there are proffer agreements,

7   there's his testimony, which says clearly the crimes that

8   they allege he committed; the $5,000 loan, in which he

9   loaned to somebody, the story is basically this was a

10  Colombo associate and in dealing with this Colombo

11  associate, he was attempting to get him, the Colombo

12  associate, to join the Bonanno family, and then there was

13  some dust-up where someone in the Colombo family says you

14  can't do that and the $50,000 that was loaned allegedly

15  by Mr. Badalamenti to this individual was paid back.

16        The other crime that they're alleging that

17  happened in '99 was that he took over some bar with this

18  individual and obviously, I guess the testimony is going

19  to be that he kicked the owner out because he hadn't paid

20  him some money.

21        But, Judge, I think it's extremely important

22  that the government knew about this in 2004 and didn't

23  arrest him in 2005, 2006, even up to today and now they

24  use these two predicate acts.

25        Your Honor, I know the government can ask for

11

**Proceedings**

1    pretrial detention on dangerousness and they can proceed

2    by proffer which makes it extremely difficult, if not

3    impossible, for a defense lawyer to challenge these

4    accusations.  I can't cross-examine this individual,

5    although I have his statements as to why this happened,

6    when it happened and we're talking about 1999 with the

7    government having knowledge of it in 2004.

8           This particular crime that they're talking

9    about, extortion, that occurs within the statute of

10   limitations, the victim in this case -- alleged victim in

11   this case -- has been portrayed in all the media, Judge,

12   he was on a TV show and that he's charged basically among

13   other things, with murder.  And he's testifying or will

14   testify according to what the government says as a John

15   Doe, that he was loaned $5,000 and paid $3,500 back and

16   for $1,500 -- $1,500, Judge, he's accused of having

17   people, I guess, threaten this victim, this person who

18   committed a murder to get the money back; $1,500, Judge.

19          Mr. Badalamenti has four buildings, Judge, that

20   he manages.  He collects in rents, $15,000 a month.  He

21   works in a bagel store, has a piece of it, I think, I am

22   not sure where he gets paid.  He has a house with a

23   mortgage on it, his wife, she's here, two children -- two

24   -- I mean, I hate to use this word but it's been used

25   before, I mean to think that he would jeopardize all this

12

**Proceedings**

1   to try and collect $1,500, Judge, is just quite frankly

2   absurd.

3            Now understand what I am saying, Judge, the

4   government has an absolute right to proceed in this case.

5   There's no question about that.  But they don't have a

6   right to detain him.  And what they do in these cases,

7   Judge, as I have seen in the past, although I haven't

8   represented people in this arena for a long time, is they

9   stuff the record with all the decisions of judges where a

10  person has been held in detention just because of who he

11  is and an allegation that he belongs to an organized

12  crime family.

13           I did a little research on this case, Judge, on

14  where they do it.  I have here, I think, fifteen cases in

15  the eastern district, United States v. Spero, United

16  States v. John Gotti, Jr., United States v. Anastasia,

17  United States v. Gigante, Judge Nickerson's decision,

18  United States v. Bellomo, United States v. Orena,

19  Judge Korman.  And all these cases --

20           THE COURT:  You've forgotten Peter Gotti.

21           MR. FISCHETTI:  What?

22           THE COURT:  You forgot United States v. Peter

23  Gotti.

24           MR. FISCHETTI:  Peter Gotti; was he released on

25  bail?  No.  No, I'm saying, Judge, they have fifty cases

13

**Proceedings**

1  in here where they were not released on bail.  What I am

2  saying, they don't include any of the cases here where

3  they were released on bail.  Let's take Arena, I mean if

4  you want to go through them, he was charged with

5  conspiracy to murder, weapons possession, and alleged to

6  be a member of the Colombo family and the son of the

7  alleged boss was released on bail.  Okay?  Judge Sifton,

8  United States v. Vallilla (ph.), defendants alleged to be

9  high-ranking members of the Gambino family, released on

10 bail.  United States v. Bellomo, Judge Kaplan, release on

11 bail for the acting underboss charged with conspiracy to

12 murder.

13         I've got case after case on that, Judge.  So

14 I'm saying you can't just take the cases that are

15 submitted by the government and say all we have to do is

16 throw something up in the air and say he's the boss of

17 the family and he should be detained.  He's not charged

18 with murder.  He's not charged with conspiracy to murder.

19 He's not charged with any activity that caused injury to

20 anybody. He's charged in the one charge that if he wins

21 in this case, defeats the RICO -- defeats the RICO,

22 because there's predicate acts.  The only charge that he

23 has within the statute of limitations which they could

24 charge him with is trying to collect $1,500.  That's the

25 charge, Judge.

14

**Proceedings**

1              And I want to say one more thing, Judge, and

2    this  am saying basically as not a reason because your

3    Honor should deny the preventive detention but how

4    difficult it is -- I am not saying, and I say it again,

5    but I can't defend him properly if he's incarcerated but

6    the difficulty is really enormous.  I've seen him twice.

7    The first time I went to see him, I waited four and  a

8    half hours.  He didn't come down because I found out

9    later, there is something called a separation order.  So

10   I raised that before Judge Amon and the United States

11   Attorney said that there was a way to avoid that.  There

12   is a separation order and what I had to do was e-mail all

13   the other defense lawyers in the case and pick my own

14   time, which I did last Friday with myself and my partner.

15   Ms. Malgieri went down.  Now this time we only waited two

16   hours and nobody was down there from the indictment.  And

17   when I asked the Lieutenant, they told me it's not a

18   separation order for only the defendants in this case,

19   it's a separation order for others.  He wasn't allowed to

20   tell me the others.  I was down there with one of the

21   lawyers who has a defendant in this case and he told me,

22   I don't know if it's true, that Ms. Argentieri has sent

23   to the MCC a separation order for all people who are

24   alleged to be members of the Bonanno family.  I don't

25   know who they are but if that's not true, I waited two

15

**Proceedings**

1   hours with nobody down there.

2          Now I am not saying that would prevent me from

3   seeing him and going over fifty consensual recordings,

4   only one of which is his, Judge, over this period of time

5   but there's no necessity for this.  When he was allowed

6   out on bail last time before a judge, nothing happened

7   between the time he was allowed on bail, between the time

8   he pled guilty, he got fifteen months.  He also was on

9   supervised release for another three years, there was no

10  charge at all that he ever committed a crime during this

11  period of time.

12         And I want to tell you one more thing, Judge,

13  which troubles me about this case.  In 2009, on December

14  16, Judge, that was two years ago, Mr. Badalamenti was in

15  a social club and the allegation is he's got an interest

16  in that social club, a social club where individual

17  people go down and play cards and -- your Honor's

18  familiar with social clubs, so I see your Honor was

19  smiling.

20         In any event, on December 16, 2009, Judge, and

21  the estimates vary, the estimates vary between twenty and

22  forty agents, descend on the social club wearing DEA

23  jackets and they come into the social club and they take

24  all the people out of the social club on the 16th and

25  line them up out in the cold and they conduct a search.

16

**Proceedings**

1  They conduct a search according to the search warrants,

2  it's supposed to be a meeting of the Bonanno family, of

3  BlackBerries, pagers, electronic devices, and everybody's

4  outside and they conduct their search and as far as I

5  know, I don't have a return on the warrant nor do I have

6  the affidavit to the warrant which I'll get now, nothing

7  was seized.  I mean, there was no drugs.  There were no

8  weapons.  There were no gambling slips, nothing.

9          And do you know what else they did, which

10  really surprises me, and perhaps I can get an answer to

11  this because I haven't been able to get an answer to this

12  from the government, they take Mr. Badalamenti who is

13  outside, they handcuff him, they put him in a police car

14  and they take him somewhere downtown.  He doesn't know

15  where.  He says it was some kind of warehouse.  It may

16  have been DEA headquarters downtown.  He's taken in the

17  police car there and he's taken upstairs and he's

18  photographed, printed.  He's examined, asked if he wants

19  to make any statements, which he doesn't.  He's held for

20  hours.  Then he's released; never arrested.  No arrest

21  warrant, nothing.  I have no idea under what section the

22  government has a right to seize not the recording devices

23  but seize an individual and keep him for hours.

24          Now, mind you, this is a man who is supposed to

25  be a high ranking member of the Bonanno family.  This

**Proceedings**

1    happens on December 16, 2009.  We are now in February,

2    Judge; no arrest occurred during that time.  No arrest

3    occurred from the time he was released in 2005 until now,

4    seven years.  The two predicate acts are twelve years ago

5    and the one act within the statute of limitations is

6    $1,500.

7            Your Honor, if there were no allegations of

8    being in the Bonanno crime family, I ask that he be ROR'd

9    and returned.  As it is now, I would put up bail from his

10   wife, who is here to sign.  He has a home that's worth

11   $1.3 million with about a $300,000 mortgage.  His sister

12   Michelle is here.  She has a home in Long Island,

13   mortgage-free, that's $600,000.  His sister, Patricia

14   Badalamenti -- Patricia Coro (ph.) actually, that's her

15   married name; unfortunately her husband's deceased, is

16   here.  They will all sign as sureties on that.  And I

17   think I've made a showing hopefully, your Honor, that

18   there's no reason for Mr. Badalamenti to be detained.

19           THE COURT:  I want to hear from the government.

20           MS. ARGENTIERI:  Just for the record, Judge,

21   Mr. Fischetti has never asked me or any lawyer for the

22   government about the circumstances of Mr. Badalamenti

23   being detained; not once.  So when he says that he has

24   yet to receive an answer and he's been continually

25   inquiring --

18

**Proceedings**

1          MR. FISCHETTI:  I didn't write, I asked.

2          MS. ARGENTIERI:  -- it just -- yes, he didn't

3    ask me and he didn't ask Mr. Frank.  So, I am not sure

4    who it is that he claims to have asked.

5          Second of all, I am not sure what

6    Mr. Badalamenti said to the agents in the three hours

7    that he allegedly spent with them but I am happy to ask

8    them and follow-up on that now that it's been raised.

9          Judge, the third thing --

10          MR. FISCHETTI:  Excuse me, I don't mean to

11    interrupt but it's not his sentence; I want to know why

12    you took him into custody.

13          MS. ARGENTIERI:  Judge, the third thing is that

14    I saw Mr. Fischetti reading from 302s that appear to have

15    been marked with 3500 number and I believe that there

16    were 302s turned over at one of the Persico trials and

17    that 3500 material is subject to a protective order.  So

18    I would like to know -- I would like him to identify for

19    me what case those materials are related to, so that we

20    may continue to look into it as I saw him reading from

21    them just now here today.

22          MR. FISCHETTI:  Well, I will answer that if she

23    answers me why she took him into custody when arrested.

24          MS. ARGENTIERI:  I didn't take anyone into

25    custody and I --

**Proceedings**

1          MR. FISCHETTI:  You were there.

2          MS. ARGENTIERI:  I --

3          MR. FISCHETTI:  Your Honor, Ms. Argentieri,

4    which I find really unusual, was at the scene of the

5    search directing people what to do and directed the agent

6    to -- let me hear from her that she wasn't there.

7          MS. ARGENTIERI:  This is a sideshow, Judge.  I

8    have --

9          MR. FISCHETTI:  Were you there?

10         MS. ARGENTIERI:  I am raising a legitimate

11   issue with regard to the protective order --

12         MR. FISCHETTI:  I'm raising a legitimate issue,

13   also.

14         MS. ARGENTIERI:  -- that I believe was

15   violated.

16         THE COURT:  Well, let me just -- first of all,

17   let's deal with the question of detention.

18         MS. ARGENTIERI:  Okay.

19         THE COURT:  And then we'll deal with the

20   question of the 3500 material.

21         MS. ARGENTIERI:  Okay.

22         MR. FISCHETTI:  Now --

23         MS. ARGENTIERI:  With regard to bail, Judge,

24   the government -- I'm sure you've read our submission.

25   We believe we've met the standard to prove that both he

20

### Proceedings

1    is a risk of flight and that he's a danger to the

2    community.  Mr. --

3              THE COURT:  Well, Mr. Fischetti has raised a

4    number of issues.

5              MS. ARGENTIERI:  And I am going to respond to

6    them, Judge.

7              THE COURT:  Okay.

8              MS. ARGENTIERI:  The fact is that you can't

9    just separate one extortion and say that he's charged

10   with this one extortion.  He's charged with being a

11   member of the Bonanno family, with being a member of --

12   with being basically the street boss of the Bonanno

13   family.  And he's charged with racketeering, Judge and

14   that does not breakdown into any number of predicates.

15   He's charged with three predicate acts.  They are crimes

16   of violence.  The first predicate act he's charged with

17   deals with him kicking -- directing his associates to

18   kick a bar owner, not a mobster, not a mob associate,

19   someone who works in these neighborhoods, out of the bar

20   because the person didn't repay a loan to

21   Mr. Badalamenti.

22             He is engaged in a pattern of loansharking.

23   The loans go back to 1999.  The most recent one was

24   started in 2009.  And this isn't Mr. Badalamenti had to

25   collect $1,500.  He sent members of the Bonanno family to

21

**Proceedings**

1   go collect that money from an extortion victim.  The

2   government's evidence of that crime is strong.  It

3   consists of cooperating witness testimony and a tape.  It

4   doesn't matter if it's one tape or fifty tapes; the crime

5   is on tape.  In addition --

6           THE COURT:  And what does the tape say?

7           MS. ARGENTIERI:  In the tape what happens,

8   Judge, is that the cooperating witness goes into Mr.

9   Badalamenti's social club which he frequents every day,

10  Judge.   This isn't a defendant who goes to work.  We had

11  a GPS on his car for some time.  The one place that this

12  defendant goes every day is his social club which is in

13  Brooklyn, which is the same club that was raided in 2009.

14  And so, the cooperating witness entered the social club.

15  He goes to pay Mr. Badalamenti the money.

16  Mr. Badalamenti explains to him that the money was taken

17  off the top of money that the CW owed Nicky Santora and

18  that if he wanted to repay the money, he could repay it

19  to Nicky Santora.

20          And then two minutes later, Nicky Santora, who

21  is one of his co-defendants -- this defendant's

22  co-defendant, who is on supervised release shows up at

23  Mr. Badalamenti's social club because this is how it

24  works, Judge.  They don't abide by the conditions of

25  their release and Mr. Pagan -- and the cooperating

22

**Proceedings**

1    witness pays him the money.

2           So it's all on tape.  It's -- the evidence of

3    this is very strong and --

4           THE COURT:  So you theory is there that

5    Mr. Badalamenti was directing the process.  Is that, I

6    mean --

7           MS. ARGENTIERI:  There are a number of

8    recordings with Bonanno family soldier Anthony Calabrese

9    and with Bonanno -- former Bonanno family consiglieri

10   Anthony Graziano, where they are talking about how

11   Mr. Badalamenti sent Anthony Calabrese, a guy name "Fat

12   Artie Tarzia (ph.) who is another Bonanno soldier, who

13   reports to this defendant, and Vito Balsamo, to collect

14   this debt from the cooperating witness.

15          MR. FISCHETTI:  $1,500, Judge.

16          MS. ARGENTIERI:  And it was Mr. Badalamenti's

17   loan and he extended it and the amount of money is not at

18   issue.  I mean it's -- he can keep saying $1,500 all he

19   wants but it doesn't make it less of a crime.

20          And, Judge, there's ample evidence of this

21   defendant's leadership in the Bonanno family.  He has

22   been recorded by three separate associates and a member

23   of the Colombo family in 2010 and 2011.  And during those

24   recordings, he is allowing his social club to be used for

25   meetings at other organized crime families.  He's talking

23

## Proceedings

1   about the management of the Bonanno family.  He's talking

2   about the management of the Colombo family.  And he's

3   allowing them to conduct their business in his social

4   club.

5          In addition, in one of the -- I think this is a

6   really important recording, Judge, that the cooperating

7   witness meet Vita Balsamo, they're trying to set up a

8   meeting with this defendant and Anthony Graziano and the

9   problem is that Anthony Graziano was just recently

10  released to a halfway house and they're trying to figure

11  out sort of where this meeting is going to take place.

12         And so Vito Balsamo is brokering this with the

13  witness and he says, "Vinnie said we could do it any day.

14  He said we could do it any time providing Anthony's

15  comfortable and Anthony's safe."  And they set it up at a

16  pre-arranged meeting location and they come up with a

17  code to use on the phone.

18         So here is the defendant aware that Anthony

19  Graziano is not supposed to be meeting with members and

20  associate of organized crime, aware that he's not

21  supposed to be associating, let alone committing more

22  crimes.  And by the way, Judge, this is a recording in

23  late 2011.  And someone on his behalf is setting up pre-

24  arranged code words, pre-arranged meeting times.  He's

25  like if we're going to call it off, I'll call you on the

24

**Proceedings**

1   phone and I'll say X.   Why?   To avoid law enforcement

2   surveillance.   This is a sophisticated defendant, Judge.

3           And it's not that the government's simply

4   throwing it out there, that he's on the ruling panel or

5   that he's a street boss.   We have tapes and witnesses who

6   are going to testify to that, multiple ones, who are

7   going to testify about his position in the Bonanno

8   family.

9           In 2002, Judge, he was a newly inducted member.

10  He wasn't -- he didn't have the position that he has now.

11  And these cases that we cited make clear that the danger

12  of having someone in his position out on the street, even

13  on a bracelet, even locked in his house, Judge, are that

14  people will pass messages on his behalf because these are

15  defendants that know how to do that.   And that the danger

16  to the community is that they will continue to commit

17  crimes on the enterprise's behalf; collecting on his

18  loanshark book.   I mean there's going to be testimony for

19  the last ten years that he's been a loanshark.

20  Collecting --

21           THE COURT:   Beyond what's charged in the

22  indictment?

23           MS. ARGENTIERI:   Are there other people who

24  will say that he supports businesses and that he collects

25  money from people?   Yes.

25

**Proceedings**

1          MR. FISCHETTI:  How do I defend against that in

2  an argument?  How do I do that?

3          MS. ARGENTIERI:  And we're entitled to proceed

4  by proffer, Judge.  In addition --

5          MR. FISCHETTI:  What's the proffer?  You saying

6  it?

7          MS. ARGENTIERI:  I --

8          MR. FRANK:  The proffer is that there's

9  extensive cooperate --

10          MR. FISCHETTI:  Excuse me, I am talking to her.

11          MR. FRANK:  And I am responding to you.

12          MR. FISCHETTI:  Good.  And I'll respond to you.

13          MR. FRANK:  The proffer is that there's

14  extensive cooperating witness testimony, Judge, from

15  multiple cooperating witnesses who will testify that this

16  defendant is the acting street boss of the Bonanno crime

17  family.  This is a different situation from 2002 when the

18  defendant was a member of the Bonanno crime family.

19          Over the last decade, he has ascended the ranks

20  to the point where he is now the highest ranking Bonanno

21  member, not incarcerated, at the time of his arrest.  If

22  he is willing to send three members and associates of the

23  Bonanno crime family to extort a victim over a $1,500

24  debt, Judge, what is he going to do when he faces five or

25  six years in prison?  That is the danger to the community

26

**Proceedings**

1    that Ms. Argentieri's been talking about.

2         THE COURT:  So the concern is that there may be

3    witness tampering; is that what you're suggesting?

4         MR. FRANK:  The concern is that there may be

5    witness tampering.  The concern is that this defendant

6    who is a recidivist, who was incarcerated for fifteen

7    months for extortion in the mid-2000, then came out of

8    prison and resumed extorting witnesses again, will simply

9    resume the activities that he's previously engaged in.

10        These types of crimes, these racketeering

11   crimes, the extortion crimes, don't just stop.  They

12   continue.  The enterprise is continuing and he's its

13   highest ranking member, Judge.  So he has all of those

14   members and associates at his disposal, both to engage in

15   witness tampering and to continue to engage in the crimes

16   that he's been engaging in for the past decade.

17        THE COURT:  Are the witnesses going to be

18   testifying that he might not have directly been involved

19   in the specific extortion but that he was ordering others

20   to do it?  Or is it just what's in the indictment, the

21   four corners of the indictment?

22        MR. FRANK:  Well, that's exactly what

23   Ms. Argentieri was just talking about, that he both

24   personally extended loans and collected on those loans

25   and he also directed other members and associates of the

27

### Proceedings

1   Bonanno crime family to do that.  And that's on tape,

2   Judge.

3          THE COURT:  And those actions took place

4   sometime between the time that he was released from his

5   last incarceration period to date?

6          MR. FRANK:  That's correct.

7          MS. ARGENTIERI:  Yes.

8          MR. FISCHETTI:  Judge, he's talking about him

9   being in this --

10          MS. ARGENTIERI:  If I could just make one more

11   point.  I'm sorry.

12          MR. FISCHETTI:  Of course.

13          THE COURT:  Sure.

14          MS. ARGENTIERI:  I just want to finish

15   responding.

16          MR. FISCHETTI:  Of course.

17          MS. ARGENTIERI:  You know, Mr. Fischetti just

18   took the position that this was a complex case.  We

19   argued to Judge Amon that it was a complex case and

20   Mr. Fischetti said he didn't think it was a complex case.

21          MR. FISCHETTI:  I still don't.

22          MS. ARGENTIERI:  So he really can't have -- he

23   can't have it both ways.  So if the notion that it is a

24   complex case is what should keep Mr. Badalamenti in jail,

25   I withdrew my letter, Judge, and he argued that it was

28

**Proceedings**

1   not a complex case which I believe that we'll be

2   proceeding to trial shortly.

3            MR. FISCHETTI:  I hope so.

4            MS. ARGENTIERI:  So therefore, I don't think

5   that that is a valid argument, Judge, and I don't

6   understand that point.  I don't think it's a valid point.

7            MR. FISCHETTI:  I'll explain it.  I want to go

8   to trial.

9            THE COURT:  Wait, let me just make sure she's

10  done.

11           MS. ARGENTIERI:  The one other thing, Judge, is

12  that we also believe that Mr. Badalamenti represents a

13  risk of flight.  This hasn't gotten much -- he has the

14  resources to flee certainly and when he learned -- when

15  he suspected that one of our recent cooperators was

16  cooperating, he told another cooperating witness that he

17  was going to hide out in Pennsylvania for some period of

18  time.  And I believe that he did, Judge.  So, we believe

19  that he also is potentially a risk of flight.  He has the

20  resources and there would be nothing stopping him.

21           MR. FISCHETTI:  Judge, so much of what they say

22  is so completely untrue that I am shocked.

23  Mr. Badalamenti knew he was going to get arrested in this

24  case.  He called me and told me he was going to be

25  arrested, wanted to know where I was in case he did get

**Proceedings**

1   arrested and he was arrested.

2         He's never gone, he's never fled, he's never

3   gone anywhere.  And to have them say that he engaged in

4   this criminal conduct of ten years, I'm telling you I

5   don't know where US attorneys come from today.  I just --

6         MR. FRANK:  Judge, I --

7         MR. FISCHETTI:  I haven't finished.

8         MR. FRANK:  I've just been listening to

9   Mr. Fischetti --

10        MR. FISCHETTI:  Counsel, I haven't finished.

11  Counsel, I haven't finished.

12        MR. FRANK:  I've just been listening to

13  Mr. Fischetti talk about the weakness of the evidence --

14        MR. FISCHETTI:  Judge, may I listen -- may I

15  finish?

16        MR. FRANK:  -- in the case and now apparently

17  his client --

18        MR. FISCHETTI:  May I finish?  May I finish?

19        MR. FRANK:  -- knew that he (indiscernible)

20   time he was about to be arrested.

21        THE COURT:  Hold on.

22        MR. FISCHETTI:  May I finish.

23        THE COURT:  Let mr. Fischetti finish and then

24  I'll hear you.

25        MR. FISCHETTI:  I'll finish and then hear from

**Proceedings**

1   him.  I've got 302s here that she wants --

2   MS. ARGENTIERI:  I just --

3   MR. FISCHETTI:  I'm not finished.  Talking

4   about the exact crimes that he was supposed to have

5   committed.  They're dated 2004.

6   THE COURT:  And where did you get those?

7   MR. FISCHETTI:  I got them from an attorney,

8   Judge, who gave them to me.

9   MR. FRANK:  Violation of a protective order.

10   THE COURT:  Weren't they supposed to be

11   returned to the government --

12   MR. FISCHETTI:  I didn't get a protective order

13   on this.

14   THE COURT:  No, at the conclusion of the --

15   yes, I know, but the person who gave them to you --

16   MR. FISCHETTI:  They told me it wasn't governed

17   by a protective order and they sent them to me.

18   MR. FRANK:  You're an officer of the court,

19   Mr. Fischetti.

20   MR. FISCHETTI:  What do you mean I am an

21   officer of the court?  I don't know that these are

22   covered by a protective order.

23   MS. ARGENTIERI:  Could be --

24   MR. FISCHETTI:  There's nothing on them that

25   says that.

31

**Proceedings**

1          MS. ARGENTIERI:  It could be very simply

2    resolved by you telling us the case number.

3          MR. FISCHETTI:  I will tell you the case

4    number.

5          MS. ARGENTIERI:  Okay, what is it?

6          MR. FISCHETTI:  Let me finish.  Well, let me

7    finish the argument.

8          THE COURT:  Okay.

9          MR. FISCHETTI:  Judge, the argument is -- it

10   doesn't matter how I got them, when I got them.  I'm not

11   barred from getting this.  You'll read these, Judge, this

12   is 2004 saying exactly what they're saying about these

13   crimes that they did nothing about it.

14         THE COURT:  Well, but --

15         MR. FISCHETTI:  For eight years.

16         THE COURT:  But some of what counsel was saying

17   related to crimes in 2011, if I understood --

18         MR. FISCHETTI:  One crime, Judge.

19         THE COURT:  Well --

20         MR. FISCHETTI:  $1,500.

21         THE COURT:  No, no, beyond that one.

22         MR. FISCHETTI:  That's the only one.

23         THE COURT:  I believe that counsel was saying

24   there were more.

25         MR. FISCHETTI:  Judge, when we --

32

**Proceedings**

1    THE COURT:  If I am wrong, correct me.

2    MR. FISCHETTI:  On what basis, Judge?  I have

3 nothing on that.  There's nothing in the detention memo

4 on that.  There's nothing here except they're saying it.

5 What if they say he committed conspiracy to murder, how

6 am I supposed to defend against that?  Where does it say

7 that?  This is ridiculous.

8    MR. FRANK:  Judge, he was incarcerated after

9 those crimes.  He was subsequently released and then he

10 resumed committing the additional extortionate extension

11 of collection that's charged in the indictment.

12    MR. FISCHETTI:  Okay.

13    THE COURT:  But am I wrong --

14    MR. FISCHETTI:  Okay, that's 2004.  He was

15 released in 2005.  He was released in 2005.  This is

16 2004, eight years ago.

17    MS. ARGENTIERI:  I really appreciate it if we

18 could just tone this down a little bit.

19    MR. FISCHETTI:  Certainly.

20    MS. ARGENTIERI:  Judge, we do have additional

21 source information that Mr. Badalamenti was a loanshark

22 in the years after that 302 and that he sought to collect

23 on debts.  We do have that information in addition to the

24 charged crime.  So that's not charged right now, Judge.

25    MR. FISCHETTI:  How am I supposed to defend

33

**Proceedings**

1  against that?

2          MR. FRANK:  Just to respond, Judge, to the

3  point that we didn't do anything about it --

4          MR. FISCHETTI:  How am I supposed to defend

5  against that?

6          THE COURT:  The problem, Mr. Fischetti, is that

7  the courts have said they could proceed by proffer.

8  You're stuck.  I can't help you out now.

9          MR. FISCHETTI:  Well, no, there's a difference

10  on proffer.  Do they have statements?  Do they have 302s?

11  Do they want to put an agent on?  They just say it and

12  that's their proffer?  I have to respect that?  This is a

13  litigation, Judge, on both --

14          THE COURT:  Well, do you have the --

15          MR. FISCHETTI:  -- sides.

16          THE COURT:  -- agent who can testify?

17          MS. ARGENTIERI:  We don't have an agent

18  available right now today, Judge.

19          THE COURT:  Well, we can put it over for a

20  hearing.

21          MS. ARGENTIERI:  Okay.

22          MR. FISCHETTI:  I don't want to put it over for

23  a -- I want him out today.

24          THE COURT:  Well he's not going to get released

25  today, Mr. Fischetti.  There's --

34

**Proceedings**

1          MR. FISCHETTI:  Well, I think that's wrong,

2    Judge, absolutely wrong.

3          THE COURT:  Well --

4          MR. FISCHETTI:  So make your ruling now, Judge.

5          THE COURT:  We disagree.

6          MR. FISCHETTI:  You want to keep him detained,

7    make it and I'll take my appeal.

8          THE COURT:  You don't want to have a hearing?

9          MR. FISCHETTI:  Yes, I want a hearing, a real

10   hearing where I could cross-examine somebody.  If you're

11   not going to give me that, detain him.  I don't think

12   there's any reason why he should not be released today on

13   the basis of what's in the indictment, what's in the

14   detention memo and based upon what I have here on a

15   $1,500 loan when he was out.  You want to detain him?

16   Detain hi.

17          THE COURT:  All right.  Well, I'm reserving

18   decision and you'll get my decision in writing.

19          MR. FISCHETTI:  Thank you, Judge.

20          MS. ARGENTIERI:  Actually, can I have the

21   number on those 302s before he walks away, Judge?  I'd

22   really like to deal with that.

23          MR. FISCHETTI:  And I'd like to have the tapes

24   if there is going to be a hearing on what they rely upon.

25          MS. ARGENTIERI:  I just want the number off the

35

**Proceedings**

1   302s, Judge.

2          THE COURT:  Well, you said no hearing.

3          MR. FISCHETTI:  No.

4          THE COURT:  So I am going to just decide.

5          MR. FISCHETTI:  You decide.  You decide.  Could

6   you decide now, Judge?

7          THE COURT:  No, I am not deciding now.

8          MR. FISCHETTI:  All right.  Can I bring up the

9   sureties, so at least you see what we have here?

10          THE COURT:  I take your word for it.

11          MR. FISCHETTI:  Oh, good.  Thank you, Judge.

12   It's very nice that you take my word for that.

13          THE COURT:  No need, Mr. Fischetti, to be, you

14   know, sarcastic with me.

15          MR. FISCHETTI:  I'm upset, Judge.

16          THE COURT:  I understand that.

17          MR. FISCHETTI:  I have ea client to represent.

18          THE COURT:  You and I go way back and I don't

19   need this.  I don't deserve it and I don't need it.

20          MR. FISCHETTI:  Fine.

21          THE COURT:  I have given you an opportunity to

22   be heard.  I'm going to consider your arguments

23   carefully.  I'm going to go back and look at some of the

24   cases that you have cited but I really do not appreciate

25   the sarcasm and you know better.

36

## Proceedings

1          MR. FISCHETTI:  Fine.  Let me give you the rest

2   of the cases, Judge, since you're going to look at cases

3   and the cites.

4          THE COURT:  If you've got them all there on a

5   piece of paper, I'll take it.

6          MR. FISCHETTI:  Thank you.  I'll submit them to

7   you.

8          THE COURT:  And can we have the docket number

9   of the case that you're referring to?

10          MS. ARGENTIERI:  It's under the 3500 number on

11   the top right-hand corner.

12          MR. FISCHETTI:  4-cr -- I'm finding it

13   difficult to read.  4-cr --

14          MS. ARGENTIERI:  04-cr-911-SJ.  And can I just

15   ask, Mr. Fischetti, if he received those 302s from a

16   lawyer on that case?

17          MR. FISCHETTI:  May I ask the government why

18   they held my client in custody?

19          MS. ARGENTIERI:  Judge?

20          MR. FISCHETTI:  I'm not responding to her if

21   she won't respond to me.

22          THE COURT:  Well that's part of the pretrial

23   discovery which is kind of beyond my scope here.

24          MR. FISCHETTI:  Fine.  I'll ask Judge Amon.

25          THE COURT:  Okay.

37

## Proceedings

1          MR. FISCHETTI:  Thank you, your Honor.  May we

2    withdraw?

3          THE COURT:  Yes, you may.

4              (Matter concluded)

5                  -o0o-

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

38

# C E R T I F I C A T E

I, LINDA FERRARA, hereby certify that the foregoing transcript of the said proceedings is a true and accurate transcript from the electronic sound-recording of the proceedings reduced to typewriting in the above-entitled matter.

I FURTHER CERTIFY that I am not a relative or employee or attorney or counsel of any of the parties, nor a relative or employee of such attorney or counsel, or financially interested directly or indirectly in this action.

IN WITNESS WHEREOF, I hereunto set my hand this **13th** day of **February**, 2012.

*Linda Ferrara*

Linda Ferrara
Transcriptions Plus II, Inc.