

*U.S. Department of Justice*

*United States Attorney*
*Eastern District of New York*

EMN:NMA
F.#2011R01798

*271 Cadman Plaza East*
*Brooklyn, New York  11201*

March 1, 2012

**By Hand and ECF**

The Honorable Carol B. Amon
Chief United States District Judge
United States District Court
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

      Re:  United States v. Vincent Badalamenti, et al.
           Criminal Docket No. 12-050 (S-1)(CBA)

Dear Chief Judge Amon:

    The government respectfully submits this letter in further support of its memorandum of law in support of its motion to detain the defendant Vincent Badalamenti pending trial in the above-captioned matter.

    The government is in possession of an October 6, 2003 consensual recording that captures the defendant participating in a "sit down" to resolve a dispute with then-Bonanno family captain Peter "Petey Rabbit" Calabrese, Bonanno family soldier Salvatore Puccio and a cooperating witness ("CW"), who was a former acting captain in the Bonanno family.[1]  A copy of the recording is attached hereto.  At the time of the 2003 meeting, Badalamenti was awaiting sentencing on loansharking charges in United States v. Caridi, et al., 02 CR 1399 (NGG), having pled guilty on September 12, 2003.  See Caridi, Docket Entry No. 343.  The sitdown arose out of a dispute between Puccio and a Bonanno family associate named Dennis, who resided in Florida and was assigned to Badalamenti (then a soldier in the Bonanno family).

---

[1]  Peter Calabrese is the father of Badalamenti's co-defendant Anthony Calabrese.

As described during the recording, Puccio had lent Dennis $20,000 related to a business investment, which he believed Badalamenti had approved, and when Dennis failed to return Puccio's investment and to respond to his telephone calls, Puccio assaulted Dennis.  During the sit down, Badalamenti represented Dennis's interests, scolded Puccio for conducting business with an individual assigned to Badalamenti without Badalamenti's express permission and advised Puccio that had Badalamenti not been on bail, Badalamenti would have gone to Florida to resolve the dispute and demanded the return of Puccio's money.

For ease of the Court's review, the government provides the following time stamps and descriptions of the sit down captured by the consensual recording:

- 11:33: CW meets with Puccio at CW's house.  Puccio asks CW if he "wants to hear the story?"  CW tells Puccio that he will wait.

- 13:00: CW tells Puccio, "You can't grab somebody that's around somebody, that mentions somebody else's name. You know that, right?"

- 27:00: Puccio describes his dispute with an individual named Dennis, who Puccio says owes him $20,000 as a result of a business investment.

- 1:06:41: CW and Puccio arrive at the diner and greet Badalamenti and Peter Calabrese.

- 1:07:00: Calabrese introduces Badalamenti to Puccio as "a friend of ours."  Calabrese then excuses Puccio from the table.

- 1:12:30: Puccio returns to the table.  Calabrese tells Puccio he is going to let Badalamenti do the talking. Badalamenti then states the following:

    > We don't know each other . . . . and uh, anybody that knows me knows the type of person I am.  For me to get this hot, to push an issue like this this far, there's a point to it, okay?  Number one, I send a guy down there and you picked up your hands to him.  Okay?  You picked up your hands to the guy and told him to stay away from Fat Mike.  And he told you, "I can't stay away from Fat Mike because I was told" by me or by

>    whatever name he used that [UI]- you know Fat Mike is over here.

- 1:16:00: Badalamenti repeatedly asks Puccio why Dennis was told to stay away from Fat Mike.

- 1:18:00: Badalamenti asks Puccio what relationship, if any, "Philly" (a reference to Phil Palazotto) has with Puccio and whether Puccio is "servicing" him. Puccio denies any relationship with Palazotto. In response, Badalamenti tells Puccio that Philly has "stains" over here and "we're gonna go after it and I don't want no interference."[2]

- 1:19:00: Puccio explains to Badalamenti that a few months ago, Dennis came to Puccio with his friend about a business deal in which he wanted Puccio to get involved. Puccio tells Badalamenti that Dennis "said he cleared it with you." Puccio explains that he invested $20,000 and he was supposed to receive $125,000. Dennis then refused to return Puccio's telephone calls for three months.

- 1:23:00: Badalamenti explains:

    > It's not that I didn't want to come down. I'm on a case and my bail restrictions won't let me leave New York, or else I was down there the next day. Believe me, it's not that. I says, "I can't move," you understand? I can't move. I'm on a $1 million dollar bail and I don't feel like losing my house right now.

    CW then suggests that Badalamenti speak to Dennis again about what happened. Badalamenti discusses his understanding of the stock deal between Puccio and Dennis.

- 1:33:00: Badalamenti tells Puccio that it was poor judgment on Puccio's part to get involved in the deal with Dennis because Puccio knew "where he came from." Puccio says, "But he told me it was alright with you,"

---

[2]  If called at trial, the CW would testify that he understood Badalamenti to be saying that Philly owed money ("stains") and Badalamenti did not want anyone to interfere with his efforts to collect such debts.

       to which Badalamenti responds, "We need a little more than that." Badalamenti goes on to say that he's a "protocol kind of guy . . . . Now you're in the casino and you know the guy belongs to me, okay, and he don't have your money. You picked up your hands. That's a tough thing to swallow, for me." Badalamenti says that Puccio knew he was supposed to put a "beef" in about the money. Badalamenti goes on to say if Puccio had called Badalamenti, he would have gotten the money.

- 1:41:00: Badalamenti and Calabrese advise Puccio that had Badalamenti not been subject to travel restrictions, he would have gone down to Florida and resolved the situation himself.

- 1:47:00: CW and Puccio leave the meeting.

       In addition to the clear and convincing evidence already set forth in the government's memorandum of January 27, 2012, this recording provides still more evidence of the danger to the community that this defendant would pose if released on bail. Indeed, the recording demonstrates that, just three weeks after Badalamenti pled guilty to loansharking charges, while on bond under the supervision of the United States Pretrial Services Agency and awaiting sentencing before the Honorable Nicholas G. Garaufis, the defendant continued to participate in the affairs of the Bonanno family and engage in meetings with Bonanno family leaders on behalf of his crew. The recording also makes clear that at the time of his 2003 pretrial release, Badalamenti was willing to continue to engage in criminal conduct, by collecting debts from "Philly" and suggesting he would have collected the debt owed to Puccio. Since the time of this recording, Badalamenti has been promoted to his current position as the highest ranking, non-incarcerated member of the crime family.

       For the foregoing reasons, as well as the reasons set forth in the government's January 27, 2012 memorandum, the government respectfully submits that it has demonstrated by clear

4

and convincing evidence that the defendant would pose a danger to the community if released on bond and that his appeal of Magistrate Judge Pollak's order entering a permanent order of detention should be denied.

Dated:    Brooklyn, New York
          March 1, 2012

                                      Respectfully submitted,
                                      LORETTA E. LYNCH
                                      United States Attorney

                         By:    /s_____
                              Nicole M. Argentieri
                              Stephen E. Frank
                              Kristin Mace
                              Assistant U.S. Attorneys

Attachment

cc:  Defense Counsel (By ECF and Mail)
     Clerk of Court (CBA) (By ECF)