

**FISCHETTI**
**& MALGIERI LLP**
Attorneys at Law

747 Third Avenue, 20th Floor
New York, NY 10017
212-593-7100 Tel
212-758-2809 Fax
www.fischettilaw.com

*Ronald P. Fischetti*
*Phyllis A. Malgieri*

August 15, 2012

<u>Via ECF</u>

Honorable Carol B. Amon
Chief United States District Court Judge
Eastern District of New York
225 Cadman Plaza East
Brooklyn, New York 11201

    Re: <u>United States v. Vincent Badalamenti</u>
       <u>Criminal Docket No. 12-050 (S-1)(CBA)</u>

Dear Chief Judge Amon:

  We submit this letter in advance of Mr. Badalamenti's sentencing which is currently scheduled for August 20, 2012 at 9:30 a.m. We are in receipt of a Memorandum ("Memorandum") dated August 6, 2012 from United States Probation Officer Roberta Houlton which contains allegations of criminal behavior provided by the Government concerning Mr. Badalamenti.

  The Memorandum consumes 48 pages, with 52 paragraphs. Notably, the government has stated that it only intends to prove the allegations contained in paragraphs 2-8 and 37-39 – a total of 10 paragraphs, which contain allegations of (1) 1999 extortionate conduct as reported by Giovanni Floridia, a cooperating witness (which the Court has indicated it is not concerned with), (2) surveillance of Badalamenti; and (3) a dispute between Messrs. Graziano and Balsamo coupled with Badalamenti's presence at a diner with Balsamo and Graziano.

  With regards to the remainder of the allegations contained in the Memorandum, the paragraphs either detail conduct which is not attributed to Badalamenti, or contain allegations which the government has stated that it does not intend to prove at a *Fatico*

hearing.[1] With regard to the allegations which the government *does not* intend to prove at a *Fatico* hearing, in the interest of judicial economy, we do not address them in this letter. Since the government does not intend to prove that conduct we respectfully submit that the inquiry should end there, that this Court should not place any weight on those allegations, and that they should be stricken from the Memorandum (insofar as it will become an addendum to the PSR which will accompany Badalamenti to the Bureau of Prisons where it will be used to determine his institution, as well as his inmate classification and assessment).

Furthermore, we reiterate our request for a *Fatico* hearing should the Court choose to place any weight on (1) the allegations concerning the 1999 loansharking and extortionate conduct which are based on the statements of Giovanni Floridia (*See Memorandum at* ¶¶ *2-3 & 5-6)*; and/or (2) the allegations which the government states it does not intend to prove at a *Fatico* hearing, since we contest those allegations and believe a *Fatico* hearing would be appropriate "in order that the court not rely on misinformation." *United States v. Concepcion*, 983 F.2d 369, 387-388 (1992).[2]

With regards to the remainder of the allegations which the government claims it can prove by a preponderance of the evidence at a *Fatico* hearing (detailed in paragraphs 2-8 and 37-39), we respectfully submit that they should not impact our request that Badalamenti be credited with the 12 months he previously served on his 2003 conviction. Nor should they impact the calculation of Badalamenti's sentencing range of 21-27 months – but should only be relied upon in determining, where, within that range he should be sentenced.

Before we address those allegations contained in paragraphs 2-8, and 37-39, we address what we maintain to be the focal point for this Court in sentencing Mr. Badalamenti.

---

[1] The Memorandum states on page 48, ¶ 51, "[t]he government has advised that as to defendant BADALAMENTI, the only defendant to date who has requested a *Fatico* hearing, the government *is prepared to prove, by a preponderance of the evidence, the conduct attributable to BADALAMENTI in paragraphs 2-8 and 37-39, inclusive.*" The Memorandum also states at page 48, ¶ 52, "[t]he government has advised that as to the *remaining conduct outlined above*, although the government could prove that conduct by a preponderance of the evidence, for reasons related to law enforcement's interest in ongoing criminal investigations and additional targets, *the government does not intend to prove such conduct at a Fatico hearing.*" (emphasis supplied)

[2] Since the defense does not waive a *Fatico* hearing and does not concede the allegations that Badalamenti engaged in illegal gambling, marijuana dealing, and extortion, we respectfully request that Your Honor Order that these paragraphs, paragraphs nine (9) through thirty-six (36), forty (40) through forty-eight (48), and fifty-two (52), be stricken from the Memorandum.

2

# I.
## Mr. Badalamenti Should Receive Credit for the
## 12 Months Imprisonment He Previously Served

As this Court is aware, on April 9, 2012 Mr. Badalamenti pled guilty to Conspiracy to Collect an Unlawful Debt and his allocution was specifically limited to the time frame of February 2002 to August 2002. After repeated submissions by the defense and what we interpreted to be non-responsive resistance by the government,[3] I do not believe there is any credible doubt that Mr. Badalamenti's previous guilty plea before Judge Garaufis stemmed from the same transaction to which he pled guilty before Your Honor.[4] Indeed, page 4, ¶¶ 7-8 of the Memorandum which contain the government's evidence concerning Count One, Racketeering Act 3, state:

> The government has advised that the *evidence supporting this racketeering act consists of (1) the indictment, (2) a transcript of Badalamenti's guilty plea, and (3) a judgment of conviction for Badalamenti.* The government would introduce a certified copy of S-1 in United States v. Badalamenti, et al., 02-1399 (NGG), which charged Badalamenti with extortionate collection of credit conspiracy (Count 31). *The government would also introduce a copy of the defendant's plea minutes*, during which he stated, after being placed under oath:
>
>> Between February of 2002 and August of 2002, I along with others conspired to collect a debt through extortionate means in Staten Island.
>
> The government would also introduce a copy of the judgment in 02-1399, as proof of his conviction of such offense.

*Memorandum* at page 4, ¶¶ 7-8 (emphasis supplied).

Having already pled guilty to conspiring to collect a debt through extortionate means between February 2002 and August 2002, and knowing full well that the government intended to prove such conduct by introducing his allocution, Badalamenti chose to plead to a different crime (Conspiracy to Collect an Unlawful Debt) which would cover the exact same conduct. Doing so only required that he admit to two additional elements: that such debt was incurred in illegal gambling activity and that collection related to the affairs of an enterprise. The fact remains that the underlying transaction for both guilty pleas is identical.

---

[3] Indeed, in the government's letter dated July 18, 2012, states that the defendant's "assertion that the 2003 guilty plea and the current guilty plea stem from the same conduct," is "conclusory" and "incorrect." *Ex*. "A" at 3. The government also stated that, "[t]he defendant has offered no documentary support that the 2003 guilty plea and the current guilty plea stem from the same conduct." *Id*.

[4] We also remind the Court that we requested the relevant grand jury testimony which would clearly reveal it was the same conduct.

3

It bears emphasis that Mr. Badalamenti did not plead guilty to a decade long conspiracy but rather his allocution was limited to the eight (8) month time frame: February 2002 to August 2002.[5] To be clear, upon being questioned by Your Honor, Mr. Badalamenti acknowledged that he was aware of activities of the enterprise that postdated August 2002, however, he never admitted that he personally engaged in any further criminal activity. I therefore reiterate my argument that Mr. Badalamenti pled to the same conduct to which he pled in 2003 before Judge Garaufis and should receive credit for such time.

## II.
## The Court's Directive

Pursuant to Your Honor's Order at the July 25, 2012 conference[6], the government was to provide information to the Probation Department regarding additional criminal conduct attributable to Mr. Badalamenti. In fact, the Court narrowed its inquiry to conduct that post-dated Badalamenti's guilty plea before Judge Garaufis. Putting it bluntly to the government, "What can you allege happened *after he was sentenced by Judge Garaufis*? That seems to me to be the *central issue* here." *Ex.* "C" at 12 (emphasis supplied). Notably, among the allegations which the government claims it can prove at a *Fatico* hearing are those involving Giovanni Floridia and alleged loansharking and extortionate activity that occurred in 1999 – 4 years prior to Badalamenti's guilty plea before Judge Garaufis.

Mr. Badalamenti has been detained since his arrest on January 27, 2012, which means that by the time he is sentenced on August 20, 2012, he will have already served nearly seven months in federal prison. During the detention hearing the government repeatedly stated that Mr. Badalamenti was the boss of the Bonanno crime family[7], a loanshark for a decade[8], and remained a danger to society[9]. As a result, the Court was understandably frustrated by the "paucity" of information in the Presentencing Report. Again, the Court posited to the government, "What is your position with respect to that? Can you show that by a preponderance of the evidence or not?" to which the government responded, "*Your Honor, we can show it beyond a reasonable doubt.*" *Ex.* "C" at 11 (emphasis supplied). Indeed, the government appeared to have agreed with the Court's directive to prove such conduct:

> MR. FISCHETTI: …Now the next thing is *what else did he do?* And if they're not asking in relevant conduct to put on any other evidence of what he did, then I think I win. If he's saying no, *we can prove it, then let's -- let's go.*

---

[5] *See Transcript of allocution on April 9, 2012*, annexed hereto at *Exhibit* "B," at 28.
[6] Annexed hereto at *Exhibit* "C" is the transcript from the July 25, 2012 conference.
[7] *See Transcript of Detention Hearing before Judge Pollak held on February 13, 2012*, at 20.
[8] *Id.* at 24.
[9] *Id.* at 20.

4

      THE COURT:   I think *let's go* is the answer.

      MR. DENNEHY: That's fine.

*Ex.* "C" at 13. (emphasis supplied)

      The government responded by providing the Probation Department with material that consumes 48 pages and 52 paragraphs. Notwithstanding the significant amount of additional information which has now been provided to the Court, the government still *does not intend to prove* any relevant conduct beyond the alleged loansharking and extortionate activity from 1999, which is based on the claims of Giovanni Floridia, and Badalamenti's presence during a meeting between Messrs. Balsamo and Graziano in 2011. As will be demonstrated below, this meeting concerned a personal matter between Balsamo and Graziano and had nothing to do with Badalamenti.

### III.
### Allegations of Additional Conduct
### that the Government *is* Prepared to Prove

      The only issue then is: *what additional criminal conduct is the government prepared to prove?*

#### a. The 1999 Alleged Loansharking and Extortionate Conduct

      Four (4) of the nine (9) paragraphs which the government identifies as conduct that it intends to prove contain allegations of 1999 loansharking and extortion based on the claims of Giovanni Floridia that pre-date Mr. Badalamenti's guilty plea in 2003 (*See Memoradum at ¶¶ 2-3 & 5-6)*. However, the Court has already indicated that it is not concerned with such conduct. Moreover, Badalamenti maintains that these allegations are completely false. Indeed, the government's own belief in the truth of these allegations is undermined by the fact that the government knew about this conduct as early as September, 2004 but did not arrest and charge Mr. Badalamenti with this conduct until eight (8) years later.[10] As such, no credit should be given to these allegations and the Court should not consider them in determining an appropriate sentence. Again, if Your Honor intends to consider this conduct we respectfully request a *Fatico* hearing so that Mr. Floridia's credibility may be examined.

#### b. Information Gathered from Surveillance of Badalmenti over the Past 14 Years

      Beyond the alleged 1999 conduct, the government claims it is prepared to introduce information gathered from the government's continued surveillance and fastidious monitoring of Mr. Badalamenti. The first surveillance occurred on October 6, 1998, *fourteen years ago*, in which Mr. Badalamenti's vehicle, along with a vehicle

---

[10] Annexed hereto at *Exhibit* "D" are two FBI 302s containing these allegations dated September 23, 2004 and October 21, 2004.

registered to Constance Bilello was observed parked in front of the social club of an alleged soldier of the Bonanno crime family. How this is criminal conduct and why this should be considered by the Court is inexplicable. Moreover, we again reiterate that Your Honor was not concerned with conduct that preceded Badalamenti's 2003 plea before Judge Garaufis.

The government also points to the "search" of a social club conducted on December 15, 2009. *Relying on information provided by a cooperating witness*, AUSA Nicole Argentieri directed 25-35 agents, heavily armed and wearing flak jackets, to enter the social club during a Christmas party. She then directed the federal DEA agents to remove all of the individuals from the club, many of them of advanced age, and forced them to stand outside in the cold while the agents searched the social club and the individuals. Mr. Badalamenti was placed into custody, handcuffed, and brought to a location in the city where he was questioned for a number of hours without any charges being filed.

Notably absent from the Memorandum is that AUSA Nicole Argentieri, believing the cooperating witness, expected to interrupt a mafia swearing-in ceremony and discover evidence of same, which, according to the search application, would have included a knife, a picture of a saint, and a gun. However, the Memorandum contains none of this information because the simple truth is that the cooperating witness was unreliable. The government found absolutely no evidence of any criminal activity. Moreover, despite our repeated requests, Mr. Badalamenti to this day has not been provided with a legal basis for why AUSA Argentieri ordered his detention on that day.

Finally, the government provided the Probation Department with information that on July 27 and 28, 2011 law enforcement agents observed alleged members of the Bonnano crime family, including Mr. Badalementi, attending the wake of another alleged member. Attending a wake is not evidence of criminal activity.

Suffice to say, the above referenced surveillance is insufficient evidence that Mr. Badalamenti engaged in any additional criminal activity since his guilty plea before Judge Garaufis in 2003. It is without a doubt that Mr. Badalamenti's mere presence at a social event and wake is not evidence of criminal conduct and should not be considered in fashioning an appropriate sentence.

Interestingly, the government omitted the fact that it had tracked Mr. Badalamenti's whereabouts using a GPS tracking device that was attached to his vehicle. Yet, just like the failed December 15, 2009 raid, the government has not produced one shred of evidence that he has engaged in additional criminal conduct despite its meticulous surveillance of Mr. Badalamenti.

### c. The Alleged Collection of Debt From Mr. Balsamo in 2011

Finally, the government contends that they will prove that Badalamenti assisted in the collection of an unlawful debt solely by virtue of him meeting Balsamo and Graziano at a diner. Badalamenti's presence at a diner and meeting with Messrs. Balsamo and Graziano, which we do not contest, is not evidence of criminal conduct.[11] The only words attributed to Mr. Badalamenti are "Listen to him Vito," after Balsamo and Graziano aired out their differences which had nothing to do with Badalamenti. *Memorandum* at page 33, ¶38. Indeed, the Memorandum references the following statement which supports this position: In a conversation between Pagan and Graziano, Pagan quotes what Graziano told him concerning Graziano's statements to Balsamo at the meeting in which Badalamenti was present, "This has nothing to do with him [a reference to BADALAMENTI] it has to do with me and you." *Memorandum* at page 33, ¶ 38. Suffice to say, the government's evidence does not show that Mr. Badalamenti engaged in any criminal conduct at this meeting.

### IV.
### Conclusion

We reiterate that the conduct the government *does not intend to prove*, which includes allegations that Badalamenti engaged in illegal gambling, marijuana dealing, and extortion, should be struck from the Memorandum. Further, we submit that Your Honor should not consider these allegations when fashioning an appropriate sentence. Indeed, we have not addressed such allegations in this letter because, quite simply, if the government does not intend to prove it, it therefore should not be considered and requires no response. Of course, should the Court seek to rely on these allegations, we would respectfully seek a *Fatico* hearing concerning same.

With regards to the 1999 loansharking and extortion allegations which are reported by Giovanni Floridia, we dispute these allegations and maintain that they should not be considered by the Court absent the requisite finding following a *Fatico* hearing. A *Fatico* hearing is the only remedy that will allow Mr. Badalamenti to adequately challenge the allegations made against him.

We remind the Court that there are two distinct issues at hand. First, a determination must be made as to whether the instant offense conduct stems from the same transaction as that which formed the basis for Mr. Badalamenti's 2003 guilty plea before Judge Garaufis. If the Court finds that it is, we ask that Mr. Badalamenti be credited with the full twelve (12) months which he has already served for such conduct.

Second, the Court must make a determination as to whether the government has proven that Mr. Badalamenti has engaged in additional criminal conduct since 2002. We

---

[11] It bears noting that this is the exact same conduct that was detailed in the original Presentencing Report at ¶ 24.

7

submit that it has not. However, a*ssuming arguendo* that the Court finds that the government has proven that Badalamenti engaged in additional criminal conduct since 2002, this should not militate against crediting Mr. Badalamenti with the twelve (12) months he previously served following his 2003 guilty plea. As such, we respectfully submit that Mr. Badalamenti should receive the aforementioned 12 months credit toward his sentence -- a sentence which should be within the agreed upon 21-27 guideline range to be followed by only one year of supervised release, which the government recommended.

Respectfully Submitted,

Ronald P. Fischetti