# Exhibit C

1

1   UNITED STATES DISTRICT COURT
    EASTERN DISTRICT OF NEW YORK
2   ----------------------------x
    UNITED STATES OF AMERICA,      :
3                    PLAINTIFF,    :     12CR50
                                   :
4            versus                :     United States Courthouse
                                   :     225 Cadman Plaza East
5                                  :     Brooklyn, N.Y.  11201
    GRAZIANO ET AL,                :
6                                  :     JULY 25, 2012
                   DEFENDANTS.     :     9:30 a.m.
7   ----------------------------x

8               TRANSCRIPT OF CRIMINAL CAUSE FOR SENTENCING
                BEFORE THE HONORABLE CAROL B. AMON
9               UNITED STATES DISTRICT COURT JUDGE

10

    A P P E A R A N C E S:
11

    For the Government:
12  LORETTA LYNCH
    United States Attorney
13  BY: JACK DENNEHY, ESQ.
        AMIR TOOSSI, ESQ.
14  Assistant United States Attorney
    271 Cadman Plaza East
15  Brooklyn, New York  11201

16

    For the Defendant Graziano
17  PATRICK PARROTTA, ESQ.

18  For the Defendant Badalamenti
    RONALD FISCHETTI, ESQ.
19  ERIC FRANZ, ESQ.

20  For the Defendant Balsamo
    MICHAEL ROSEN, ESQ.

21

22  Court Reporter:
    Charisse Kitt, CRI, CSR, RPR, FCRR
23  225 Cadman Plaza East Rm N357
    Brooklyn, New York  11201
24  Tel: (718) 613-2606
    Fax: (718) 613-2696
25  Proceedings recorded by mechanical stenography, transcription
    by computer-aided transcription.

                    CHARISSE KITT, CRI, CSR, RPR, FCRR
                        Official Court Reporter

Proceedings                                    2

1              (In open court; defendants are present.)

2              THE CLERK:  United States against Graziano.  The

3     Court would like all the lawyers, actually, to step forward.

4              United States against Graziano, Badalamenti, and

5     Balsamo.

6              Please state your appearances for the record.

7              MR. DENNEHY:  For the government, Jack Dennehy,

8     D-e-n-n-e-h-y.

9              Good morning, Your Honor.

10             MR. PARROTTA:  Good morning, Your Honor and good

11    morning counsels, Patrick Parrotta for Mr. Graziano, who's

12    been produced by the United States marshals and is seated at

13    counsel table.

14             MR. FISCHETTI:  Good morning, Your Honor.  My name

15    is Ronald Fischetti, I represent Mr. Badalamenti with

16    Mr. Franz; he's here.

17             MR. ROSEN:  Good morning, Your Honor.  Michael Rosen

18    for Mr. Balsamo, who is here.

19             THE COURT:  All right, good morning.

20             I have a very basic problem in connection with all

21    of the presentence reports and the letters that have been

22    filed in response to various objections, and that is based on

23    the accounts in the presentence report.

24             I have virtually no idea what happened in this case.

25    The prosody of the information is just -- is just that.  There

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Proceedings

3

1    are references to John Doe one, John Doe two.  There's no

2    description of what was said.  Mr. Fischetti has raised an

3    issue about whether it's the same transaction.

4              The government's sole response to that is that he

5    hasn't produced documentation; I don't understand that as a

6    response.

7              There is just no information in here about what took

8    place.  Every single presentence report has the same account

9    of two purported collections of unlawful debts.  They all read

10   the same.  There's a reference in them, in the reports to a

11   John Doe three.  Apparently that's a typo?

12             Is that correct, Mr. Dennehy?

13             MR. DENNEHY:  In which presentence report, Your

14   Honor?

15             THE COURT:  It's all the same.  They all say the

16   same thing.  There's four paragraphs that talk about two

17   extortions.  The indictment has multiple charges in it, none

18   of that's mentioned anywhere and the descriptions of what

19   happened are so vague as to give me no real information about

20   what took place.

21             Mr. Balsamo, I believe, is to be a minimum player.

22   I have no idea why that's the case.  There's nothing in here

23   that gives this Court any principle basis to make assessments

24   about relative culpability or, in fact, to know really what

25   any one individual did with respect to other defendants who

Proceedings

4

1   are on next week.

2          Mr. Calabrese, there's no description of anything he

3   did.  It's just a statement basically of what the indictment

4   says.

5          The same is true of Mr. LaForte.  It says he engaged

6   in a sports gambling operation for five years.

7          Yeah, I could have read that in the indictment.

8   There's no information in these reports sufficient for this

9   Court to make a determination of relative culpability of roles

10  in the offense; nothing that would give the Court the basis to

11  address Mr. Fischetti's concern and just, you know, all the

12  reports repeat the thing about the John Doe three.

13         Tell me, Mr. Dennehy, if there was a John Doe number

14  three -- okay, let's just pick Mr. Badalamenti's report,

15  paragraph 22.

16         Do you have the report?

17         MR. DENNEHY:  I'm looking for it, Your Honor.  I do

18  know there were multiple John Does in various --

19         THE COURT:  Why do they have to be John Does?  Why

20  can't you identify who the person is, so in reading the report

21  I have some idea who the individual is; it would also address

22  Mr. Fischetti's concerns if the people were identified, who

23  you were talking about.

24         MR. DENNEHY:  Your Honor, I can certainly do that.

25  This was brought to my attention yesterday afternoon by the

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Proceedings                                5

1    probation officer.

2              THE COURT:  What was brought to your attention?

3    That the report didn't say anything?

4              MR. DENNEHY:  Well, that your Honor had concerns

5    about there was information that --

6              THE COURT:  Well, it should be obvious.  It should

7    be obvious.

8              How do you read Mr. Calabrese's report and

9    Mr. LaForte's report and think that I know anything about what

10   happened?  And the probation office has -- they didn't

11   investigate the case.  I guess they only have one source that

12   they can come to to get the information and I certainly don't

13   have it in these reports.

14             But just answer that question.  Paragraph 22,

15   Mr. Badalamenti's report, John Doe number three, is that a

16   different person or is it a mistake?

17             MR. DENNEHY:  I'm being informed by the probation

18   officer that it's a typo.  But there is -- there is a John Doe

19   that was numbered a different number in the indictment

20   originally.

21             THE COURT:  Is it a typo or not, Mr. Dennehy,

22   reading the facts?

23             MR. DENNEHY:  It is a typo.

24             THE COURT:  Well, then, why couldn't any of the four

25   people here standing in front of me have brought that to my

Proceedings

6

1    attention?  I'm trying to read this thing and I'm trying to

2    figure out how the heck John Doe three has anything to do with

3    John Doe two.

4         I mean, this -- I have a job to do; you all have a

5    job to do.  You've obviously cut deals here.  And I'm not

6    going to sentence based on the fact that, you know, you all,

7    you know, don't have a real interest in my knowing what

8    happened.  Really, this -- this is as I said the prosody of

9    the information is just something that the Court cannot make

10   reasonable decisions on.

11        I don't know why -- Why does the information have to

12   be John Does?  Why can't you have it so that there's some

13   record of who was involved?  Why does that information have to

14   be in that form?

15        MR. DENNEHY:  Your Honor, I don't know that there's

16   a need.  My initial impression was not to identify civilians

17   who were not known to the defendants prior to this or to put

18   it in the public record.  I certainly can do that.  They are

19   known to the government.

20        THE COURT:  Well, for instance, Mister -- let me

21   just point out something else.

22        Mr. Fischetti has made this entire argument about

23   the fact that what he pled guilty to, his client pled guilty

24   to was the same thing he pled guilty to before.

25        Now, there are numerous other allegations in the

Proceedings

7

1  indictment about things Mr. Badalamenti was involved in.

2       MR. DENNEHY:  Correct.

3       THE COURT:  None of that's in the presentence

4  report.  Also, there is -- as I -- the little bit that is

5  there suggests that he was involved in something in 2011, but

6  that's not flushed out in any response that the government has

7  made to Mr. Fischetti's comments.  And why isn't there -- you

8  know, why isn't there other information in the presentence

9  report about all the other charges in the indictment?  Why is

10 that information not there?

11      MR. DENNEHY:  Frankly, Your Honor, I gave to

12 probation what I thought would be sufficient, was information

13 about the counts of conviction.  I certainly can go into all

14 the other counts in the indictment --

15      THE COURT:  Well, isn't the government supposed to

16 provide all the information to the Court?  Isn't all that

17 information supposed to be there, not just the charges in the

18 indictment?  I -- people can argue about whether it can be

19 considered or not, but isn't the information supposed to be

20 before the Court?

21      I have nothing here in these reports that means

22 anything to the Court, in terms of dealing with making, as I

23 say, a reasonable judgment.

24      MR. DENNEHY:  Your Honor, I was asked that the

25 government would be seeking to introduce relevant conduct or

Proceedings                                            8

1    to do a Fatico Hearing.  And my impression of that question

2    from probation was that under the terms of the plea agreement

3    I would not be seeking a Fatico Hearing or an upward departure

4    outside the guidelines --

5                 THE COURT:  There is a difference between whether

6    you're seeking a Fatico Hearing.  I mean, it's the defendant's

7    who seek a Fatico Hearing if there is something in the report

8    that they think should not be considered.  But it doesn't mean

9    that the government presumptively decide not to provide the

10   Court with the information.

11                I mean, I understand that there are difficult

12   balances here that if the government can't prove something it

13   might be problematic.  But there's -- there can't be any

14   engaging in fact bargaining here.  The Court has to know the

15   information and then arguments can be made about whether it

16   should be considered or not considered.  But there's no way

17   for me to evaluate the argument made by Mr. Fischetti on

18   behalf of his client.

19                I mean, there were allegations about something

20   happening in 2011.  I take it it's the government's position

21   that something happened after he pled guilty before

22   Judge Garaufis, that he continued to engage in criminal

23   conduct.  If he didn't, then the issue is:  Why isn't

24   Mr. Fischetti right?

25                But my presumption would be that the government

9

Proceedings

1   thinks he continued to engage in criminal conduct.  Am I wrong

2   about that?

3            MR. DENNEHY:  No, Your Honor.

4            THE COURT:  Where is that information?

5            MR. DENNEHY:  I will supply that to probation.  I

6   apologize to the Court.  I will certainly go through

7   Mr. Fischetti at the detention hearing outlined the crimes he

8   believed we were charging his client with, including an

9   extortion in 1999 of Giovanni Foridia, and the extortion of

10  2002 and the extortion of 2011 of Hector Pagan.  So they were

11  certainly aware of it.

12           THE COURT:  Well, they might have been aware of it,

13  but guess who isn't aware of it?

14           MR. DENNEHY:  I understand the Court's --

15           THE COURT:  The person who has to make the

16  determination here.  The government has to provide the Court

17  with -- or probation, I don't know how you want to do it --

18  with an addendum or whatever.  But I have to be provided with

19  all of the information relevant to the charges, to whatever

20  other conduct there is that's relevant on the question of

21  sentencing.

22           If you are going to take the position that certain

23  people have certain roles and lesser roles, I have to know why

24  that's the case.  I -- you know, I don't have any idea now why

25  that's the case.  There's ten -- some of the charges that were

Proceedings

1   pled guilty here talk about conduct expanding on a significant

2   amount of time.  And all I have is two transactions referred

3   to, and they're not even clear.

4          So we need -- I need much more information before

5   I'm in a position to sentence a single defendant in this case.

6   And I don't understand why that wasn't obvious to everyone.

7          MR. FISCHETTI:  Judge, may I be heard, if Your Honor

8   is finished?

9          THE COURT:  Yes.

10         MR. FISCHETTI:  Judge, there are two issues that

11  Your Honor raised; I'd like to address both of them.

12         First of all, with regard to the other crimes that

13  the government claims that Mr. Badalamenti engaged in the

14  extortions of Mr. Pagan, of Mr. Foridia, the superseding

15  indictment, the marijuana, the gambling.

16         Our position all along with the government is that

17  not only can't they prove it by a presumption, but that it

18  never happened; that he was innocent and that's why we went to

19  trial or going to trial.

20         When we agreed to take a plea to the collection of

21  the unlawful debt, we did it as the paper say because there's

22  no defense to that.  Our position with that, and I think your

23  Honor is correct, with regard to the Fatico Hearing.  Because

24  if the government is going to ask Your Honor to consider the

25  extortions of Mr. Pagan, the extortions of Mr. Foridia, the

Proceedings                          11

1   gambling charge, I'm going to ask for a Fatico.

2              MR. DENNEHY:  That's not what I said.

3              MR. FISCHETTI:  I'm not saying he said it; that's my

4   position.  I think Mr. Dennehy knows that, and that's why

5   they're not asking for a Fatico Hearing.  I don't want Your

6   Honor to consider any of that.

7              So if the government's position is that they want

8   Your Honor to consider those charges as relevant conduct, then

9   I'm going to ask for a Fatico Hearing, because I don't think

10  he did those things and I think -- I don't think they can show

11  it by a preponderance of the evidence with regard to

12  Mr. Badalamenti --

13             THE COURT:  What is your position with respect to

14  that?  Can you show that by a preponderance of the evidence or

15  not?

16             MR. DENNEHY:  Your Honor, we can show it beyond a

17  reasonable doubt.

18             Mr. Fischetti, I think, is making a distinction

19  here, and that's not what I'm saying.  There's evidence to be

20  shown, and I will certainly outline it for the Court and the

21  parties, that, for example, in 1999 they extorted a man named

22  Giovanni Floridia of gambling debts.

23             That evidence is also evidence of the count of

24  conviction here, CUD RICO.  That in connection with his

25  affiliation with the Bonanno crime family, he collected a debt

Proceedings                                        12

1    which is otherwise unlawful.  That's the count he pled guilty

2    to.  And that's Your Honor's question, why is there a period

3    of 1999 to 2011 of CUD RICO conspiracy?

4              THE COURT:  What can you allege happened after he

5    was sentenced by Judge Garaufis?  That seems to me to be the

6    central issue here.

7              MR. DENNEHY:  There was an incident involving

8    Mr. Balsamo, his codefendant.  Where Balsamo owed money to

9    Mr. Graziano, and Mr. Badalamenti weighed in on it, that

10   Balsamo needed to pay it, which would be using his position --

11             THE COURT:  Well, assume presumably you can provide

12   more details than what is there.

13             MR. DENNEHY:  That was referenced in the report, but

14   frankly not sufficiently enough, Your Honor.  His presence at

15   a meeting where he intimated to Balsamo he needs to pay money

16   to Graziano regarding gambling monies that are being made by

17   the family.

18             There's also evidence of an additional collection of

19   a debt from a restaurant owner around the same time as the

20   count of conviction before Judge Garaufis.

21             But the point being, he pled to a conspiracy, that

22   between that time period he and others conspired to collect

23   debts which were in and of themselves unlawful.  So evidence

24   of extortion of conduct as to those same parties is evidence

25   of the CUD RICO.  It's not double jeopardy; it's not double

Proceedings

1    counting.

2         THE COURT:  Well, look, it may not be double

3    jeopardy or double counting.  Obviously it's an important

4    consideration for the Court whether or not that criminal

5    conduct that he is engaged in has been taken into account in

6    another sentencing proceeding and whether he has been, in

7    effect, sentenced on the same factual basis.

8         That's -- you can't say that's not a significant

9    issue.  I mean, obviously it's a significant issue.  The -- I

10   understood the government -- if the government's position is,

11   no it's the same count, there's nothing different.  We just

12   think, you know, because he's in the Bonanno crime family he

13   deserves another sentence.

14        Well, that's fine, if that's your position.  But I

15   didn't think that was your position.  I thought the position

16   was that no, it's not that, it's other things; it's additional

17   conduct in 2011.  I just need to know what the position is.

18   Whatever your position is, whatever the facts are, they are

19   what they are and people can make all of their reasoned

20   arguments about them.  My point is I don't know what the facts

21   are.

22        MR. DENNEHY:  Understood.  And I will provide those

23   to probation.

24        THE COURT:  And I want -- I want names of the

25   victims so that I can piece all of this together.  And I

Proceedings

14

1    want -- and I want more details.

2         MR. FISCHETTI:  Your Honor, one thing that I think

3    is going to be extremely important for Your Honor to decide

4    what a proper sentence is for Mr. Badalamenti, is my position

5    that he pled guilty to the same criminal conduct, not the same

6    crime, before Judge Garaufis.

7         The government in its submission says that our

8    position to have him get credit for that is based on

9    conclusory, incorrect assertion of that 2003 guilty plea; and

10   the current guilty plea stem from the same conduct.  The

11   defendant had offered no documentary support that the 2003

12   guilty plea and the current guilty plea stem from the same

13   conduct.

14        Now, Judge, I believe it absolutely is.  What

15   happened during that time is Mr. Badalamenti and another

16   person from the Luchese family induced a person by the name of

17   Stanley to pay a gambling debt, substantial gambling debt of

18   which he hadn't paid and put interest on it.  So we had been

19   arguing that.

20        And just for personal points, Your Honor, when they

21   superseded that in that indictment, that's the only count that

22   I couldn't win because I knew that Mr. Dennehy would just put

23   in the certificate of conviction.  My point now is, Judge, if

24   you're asking for more information that you direct the

25   government to provide Your Honor and me with the grand jury

Proceedings                                    15

1    minutes of what he was indicted for in this case.  And I

2    predict that if Your Honor sees the grand jury minutes, Your

3    Honor will see -- I don't know, I don't have them, and perhaps

4    you can ask the government -- will see that all they did in

5    this indictment in this grand jury was present the same

6    evidence that they did in the other grand jury.  I don't think

7    they called Mr. Stanley; that's all we know about him from ten

8    years ago.  I think --

9              THE COURT:  Is it your position, Mr. Fischetti, that

10   Stanley is John Doe number one or number two?

11             MR. FISCHETTI:  I don't know.  I can't tell from the

12   government.  I know that's the only criminal act that we pled

13   to, Judge; only criminal conduct that we pled to.  If you look

14   at our allocution and the allocution before Judge Garaufis,

15   it's the same.  Why can't we just see the grand jury testimony

16   and we'll know?

17             THE COURT:  More than that, you -- I believe

18   Mr. Badalamenti in his guilty plea talked about a specific

19   transaction?

20             MR. FISCHETTI:  That's right, Judge.

21             THE COURT:  And does the government understand the

22   transaction he allocuted to, to be the same one that he

23   allocuted to before --

24             MR. FISCHETTI:  That's my question, Judge.

25             THE COURT:  -- Judge Garaufis or a different --

Proceedings

16

1          MR. DENNEHY:  It's verbatim.  It's verbatim.  And I

2     think that's the position that the defense is taking, to put

3     forward this argument they have that it's only the same crime

4     and it should not be drawing an additional sentencing --

5          THE COURT:  Is the crime before Judge Garaufis

6     included in the extortion that he pled guilty to before

7     Judge Garaufis included in the January '99 through

8     September 7, 2011?

9          MR. DENNEHY:  It is certainly evidence of the larger

10    crime of THE CUD RICO conspiracy over that 12-year period,

11    yes.

12         THE COURT:  When he entered the guilty plea, what

13    person did you think he was talking about?

14         MR. DENNEHY:  At the time he entered the plea,

15    excuse me, he did not name anyone.  And, frankly, I didn't

16    know that this is where the defense was going because I was

17    not privy to the Judge Garaufis case at all in 2002, as was

18    defense was.

19         But in any event, I knew that the CUD RICO crime

20    charged in this indictment involving Mr. Badalamenti involved

21    multiple victims, not just one, and a 12-year conspiracy to --

22         THE COURT:  Is John Doe one or two Stanley?

23         MR. DENNEHY:  Not in this.

24         THE COURT:  In the report?

25         MR. DENNEHY:  No.

Proceedings

17

```
 1          THE COURT:  It's not?

 2          MR. DENNEHY:  No.

 3          THE COURT:   Well, that's why it's important to

 4   give --

 5          MR. DENNEHY:  I understand.

 6          THE COURT:  -- a full, factual recitation to

 7   indicate who all the John Does are and what all the extortion,

 8   the number of people extorted during this conspiracy so that

 9   we can deal with this issue.

10          MR. DENNEHY:  I understand.

11          MR. FISCHETTI:  Judge, can we get the grand jury

12   testimony?  Because my position is very, very coherent, Judge?

13   The only thing he allocuted to was this conduct.

14          THE COURT:  I don't know that that makes a

15   difference, Mr. Fischetti.  Wait a minute --

16          MR. FISCHETTI:  I think it does.  Sorry.

17          THE COURT:   If the government has other proof of his

18   involvement, I don't think it makes a difference that he, in

19   allocuting, that he pled, he allocuted to something that

20   happened before Judge Garaufis.

21          Now, if the other extortions the government puts

22   before the Court you say never happened, then you would be

23   entitled to a Fatico Hearing on those other extortions, it

24   seems to me.  But I don't know that the fact that he just

25   admitted to something that he previously admitted to when
```

Proceedings

1   we're talking about a conspiracy, if the government is able to

2   establish other extortions, means somehow I am bound to

3   consider that that's all that he did during the course of the

4   conspiracy.

5        So I don't think that's what the law is.  I think if

6   the government established it, I could consider other

7   extortions pursuant to that conspiracy and come to the

8   conclusion, assuming the government established it, that he is

9   not simply guilty of the -- of the one transaction and that

10  the other conduct is something that the Court can take into

11  account.

12       I don't know why that's not the case.

13       MR. FISCHETTI:  I understand what you're saying,

14  Judge, but we did not admit to any conduct, any conduct past

15  August 2002.

16       THE COURT:  Is it your position that that would

17  preclude me from considering other conduct that the government

18  could prove, in terms of making my sentencing determination?

19       MR. FISCHETTI:  No.  No.  But I think -- but I think

20  it comes in two parts.  He has pled guilty to being in an

21  enterprise; there's no question about that.  That's what makes

22  this crime different than the crime that he pled to before

23  Judge Garaufis.  Although in that probation report they said

24  he was an acting captain of the Bonanno family or a member of

25  the enterprise.  And what he did was collect this money by

Proceedings

1    extortion.  Now, that happened in 2002.

2              In 1999 they're claiming he was involved in an

3    extortion before -- with this fellow Floridia; we deny that.

4    And Pagan, the extortion here, we deny that.  And on the

5    marijuana charge we understand that the person who could

6    testify about that is not -- is not even alive.

7              So, yes, we contest that, Your Honor.  But even if

8    Your Honor considers that, Your Honor can consider that.  In

9    my opinion, if Your Honor, if we lose a Fatico Hearing as

10   relevant conduct, the fact would still remain that he spent 12

11   months in jail for this same collection of an unlawful debt

12   from Stanley.  And it's got to be in the grand jury minutes.

13   And if Your Honor reads --

14             THE COURT:  The grand jury minutes, I don't

15   understand -- I mean, you would need grand jury minutes if you

16   were making a double jeopardy argument.

17             MR. FISCHETTI:  No.

18             THE COURT:  I don't know what this -- assuming that

19   both indictments were premised on the same basic conduct.

20             MR. FISCHETTI:  Criminal act.

21             THE COURT:  I don't know that that would preclude --

22   it certainly wouldn't preclude the government at trial from

23   proving other extortions that they hadn't put before the grand

24   jury.

25             MR. FISCHETTI:  You're correct.

Proceedings

1          THE COURT:  And it certainly, even taking that out

2    further, it would clearly not preclude them from proving that

3    information in a sentencing proceeding.  So I don't know why

4    absent a double jeopardy argument that's not being made why

5    grand jury minutes are relevant.

6          MR. FISCHETTI:  Because I want to see and I think

7    Your Honor should see that it's the same conduct.

8    Mr. Badalamenti when he pled, he pled only to this conduct.

9    Your Honor asked him was he aware of any other conduct.  And

10   being in an enterprise he said yes, but he didn't do anything

11   else.  This is what he did.

12          Now, the government is not asking in their plea

13   agreement, Judge, and I think what Mr. Dennehy is saying now,

14   they're not asking for any relevant conduct to be considered

15   by Your Honor.  Your Honor is now saying that well, wait a

16   minute, I may want to consider it even though you don't want

17   to present it.

18          He has it but he doesn't want to present it.  So it

19   puts me in a kind of difficult position because we only pled

20   to what we did in 2002, and we had to plead to that because

21   the other charges we didn't do but we couldn't beat that

22   charge; all he had to do was put in the certificate of

23   conviction.

24          So if Your Honor finds that that act, the criminal

25   act, not the crime, the criminal conduct was the same in 2002,

Proceedings

21

1    as the government is charging in 2011, then Your Honor can

2    consider whether or not he should get credit for that time,

3    even if --

4            THE COURT:  Well, I think they've already said that

5    it was part of that, part of the conspiracy; that what he pled

6    guilty to was, in fact, part of the conspiracy.  It's not

7    being counted in his prior conviction for that reason.  So the

8    government isn't -- has never taken the position that that's

9    not relevant conduct, that it's not something that should be

10   taken into account.

11           MR. FISCHETTI:  So Your Honor is saying you would

12   take that into account as prior --

13           THE COURT:  Well, I think it's relevant that on a

14   portion of what the conspiracy that he's already served time

15   on a portion of the conspiracy, yeah.  I don't think anybody's

16   arguing that that's not the case.

17           Are you, Mr. Dennehy?

18           MR. DENNEHY:  No, I don't disagree with the

19   probation calculation of his criminal history category for

20   that purpose.  The evidence of that crime is de facto evidence

21   of the larger conspiracy to which he's now pled guilty.  It

22   has to be.

23           MR. FISCHETTI:  Well, the odds of conspiracy is

24   collection of an unlawful debt.

25           THE COURT:  Over an extended period of time.

Proceedings                                    22

1          MR. FISCHETTI:  Which they say is over an extended

2     period of time.  It starts in 2002; they say it's more.

3          What Mr. Dennehy is saying, as I understand him to

4     say, not only the criminal history which the probation report

5     has said is relevant conduct, that he should or Your Honor can

6     give him consideration for the 12 months that he served within

7     this conspiracy, then at least we have an agreement as to

8     that.  My position, my thought is that he's saying no, he

9     shouldn't get any credit for it whatsoever.

10         So if we -- we've bridged that gap, it's okay.  Now

11    the next thing is what else did he do?  And if they're not

12    asking in relevant conduct to put on any other evidence of

13    what he did, then I think I win.

14         If he's saying no, we can prove it, then let's --

15    let's go.

16         THE COURT:  I think let's go is the answer.

17         MR. DENNEHY:  That's fine.

18         THE COURT:  I understand.

19         MR. FISCHETTI:  Put Mr. Pagan on the stand, I'd love

20    to examine him.

21         MR. DENNEHY:  The question then arises that this is

22    timely acceptance of responsibility on Mr. Badalamenti's part,

23    but we'll address that later.

24         MR. FISCHETTI:  We accept responsibility for --

25         MR. DENNEHY:  Not for the crime to which he pled

23

Proceedings

 1  guilty he's not accepting --

 2          THE COURT:  Wait a minute, Mr. Dennehy.  You could

 3  have made that argument before.  Why are you making that

 4  argument now?  I haven't seen -- have you made the argument

 5  that he's not entitled to acceptance?

 6          MR. DENNEHY:  He's not -- no.  But he's now seeming

 7  to claim that the only thing he did was the 2002 case before

 8  Judge Garaufis and nothing else; yet, he pled guilty before --

 9          THE COURT:  That was apparent in all of his letters

10  and I haven't seen you --

11          MR. DENNEHY:  His allocution before Your Honor under

12  oath is that he engaged in a conspiracy to collect debts for

13  12 years.

14          MR. FISCHETTI:  No, it wasn't.

15          THE COURT:  Mr. Dennehy, let me ask you a question,

16  since we seem to be -- there's a moving target here.  In any

17  of your letters that you've written to the Court --

18          MR. DENNEHY:  I have not.

19          THE COURT:  -- to Mr. Fischetti, that you are taking

20  the position that he should not get acceptance?

21          MR. DENNEHY:  I have not.

22          THE COURT:  Well, don't you think that is something

23  you should have said before right now?

24          MR. DENNEHY:  I'm basing it on what I'm hearing

25  right now from Mr. Fischetti.

Proceedings

24

1          THE COURT:  What you're hearing right now from

2    Mr. Fischetti, he says the same thing in his letters.

3          MR. DENNEHY:  Not that he denies the 1999 extortion

4    or that he denies any other conduct at all.  That he's only

5    done one other thing in 12 years.  That's what I'm hearing

6    now.

7          THE COURT:  Well, whatever.

8          MR. FISCHETTI:  Your Honor, I didn't have to deny

9    any of that because Mr. Dennehy said that he didn't intend to

10   prove that by a preponderance of the evidence.  So why did I

11   have to say that?  The fact -- in fact, he said he was going

12   to ask for a Fatico Hearing in regards to that.  So why do I

13   say, okay, I'll show you he didn't do it with a Fatico

14   Hearing, when he's not asking for one?  So I think it's his

15   position that's changed, not mine.

16         THE COURT:  There's nothing in the plea agreement

17   that says that the government had these -- is deciding not to

18   put relevant conduct before the Court, is it?

19         MR. DENNEHY:  No.

20         THE COURT:  Indeed, under the law you can't do that.

21   You can't fact bargain.  Right?

22         MR. DENNEHY:  Correct.

23         MR. FISCHETTI:  That's correct.

24         THE COURT:  So I don't have any information about

25   anything else in the indictment, in these reports.

Proceedings                                     25

1              MR. FISCHETTI:  Well, it's what the government had

2    told us, Your Honor.

3              THE COURT:  Told you what?

4              MR. FISCHETTI:  That they weren't going to introduce

5    any evidence for Your Honor to consider as relevant conduct.

6              MR. DENNEHY:  No, we're not going to seek an upward

7    departure under the terms of the plea agreement.  I will

8    supply information to probation so that Your Honor's questions

9    are sufficiently answered about the crime of conviction and

10   everything else.

11             THE COURT:  Let me just ask you, turning to

12   Mr. Graziano for a minute.

13             MR. PARROTTA:  Yes, Judge.

14             THE COURT:  I take it, in flushing out

15   Mr. Graziano's role you'll indicate, because it's not clear to

16   me.  Is it your position that Mr. Graziano was directing these

17   collections of debts from his prison cell?

18             MR. DENNEHY:  No.  That they occurred while he was

19   in prison and that upon his release he then was directing the

20   collection of them.

21             THE COURT:  So you're not contending that while he

22   was in prison he was engaged in this conduct.  Is that right?

23   Because, again, under the extortion in John Doe one, in 2005,

24   Anthony Graziano was incarcerated in federal prison.  A

25   cooperating individual was directed to collect a

Proceedings                                          26

1    100,000-dollar loan shark, a debit from John Doe, while

2    Graziano was in prison.

3            You don't mean that Graziano directed him to do that

4    somehow from prison or --

5            MR. DENNEHY:  I guess the question is direction.  He

6    was asked to do it, but he really didn't move on it until

7    Graziano came home or was in the halfway house and then

8    started to --

9            THE COURT:  See, that's not clear in here.  One

10   might reasonably read that paragraph as saying that in 2005

11   Graziano, from prison, directs the collection of this debt.  I

12   don't know whether that's correct or not.  I guess you're

13   saying it's not.

14           MR. DENNEHY:  He put it out there and then really

15   started to put the pressure on him once he was out of custody.

16           THE COURT:  Did he do something when he was in

17   prison or not?

18           MR. DENNEHY:  My understanding is he directed the

19   cooperating witness to start looking for that money.

20           THE COURT:  While he was in prison?

21           MR. DENNEHY:  Yes.

22           MR. PARROTTA:  Judge, I don't know that there's any

23   direct evidence of that in my sentencing memorandum.  When I

24   discussed the nature and circumstances of the offense, it says

25   the offense that Mr. Graziano pled guilty to is based upon

Proceedings

1    several consensually recorded conversations between

2    Mr. Graziano and his son-in-law, cooperating witness, and

3    those conversations that were turned over by the government

4    occurred on August 16, 2011, when my client was in a halfway

5    house -- actually, he was on home detention -- and they

6    proceeded until November 9, 2011.  Additionally, when my

7    client was still on home detention and then he was arrested

8    about 13 days later, on November 21.

9            So all the evidence I have is that it occurred -- is

10   evidence that was provided to me of this conspiracy occurring

11   while my client was under house arrest.

12           THE COURT:  I'm just trying to understand what the

13   report says.  I don't know that it's better or worst or

14   anything else, I'm just trying to, as I said, understand the

15   facts which --

16           MR. PARROTTA:  Yes, Judge.  And I'm just trying --

17           THE COURT:  -- are amazingly opaque.

18           On paragraph 26 in Mr. Graziano's report there's a

19   statement that I didn't understand.  It says, Graziano

20   directed others to collect money on his behalf; however, there

21   is no evidence he had a proprietary interest in the funds

22   collected, i.e., it would not be kicked up to other family

23   members.

24           I don't know what that means.

25           MR. DENNEHY:  The conduct engaged in by Graziano was

Proceedings

28

1   to direct others to collect monies owed to Santora.

2          THE COURT:  Santora, is that a higher level in the

3   chain than Mr. Graziano?

4          MR. DENNEHY:  Well, depending on who you're asking

5   on what day.  They're either equals or Graziano is --

6          THE COURT:  I'm sorry, he was or wasn't collecting?

7          MR. DENNEHY:  Graziano was directing others to

8   collect money to give to Santora; money that was owed to

9   Santora.

10         THE COURT:  That, I understand.  But I don't

11  understand the phrase about it not being kicked up to other

12  family members.  The sentence doesn't make sense to me.  Is it

13  something that you told the probation department that has some

14  meaning that I'm missing?

15         MR. DENNEHY:  Not specifically.

16         THE COURT:  I don't understand what that sentence

17  means.

18         MR. DENNEHY:  Essentially, the probation department

19  found that there was neither a mitigating nor an aggravating

20  role for Graziano's participation because he was not receiving

21  any of the monies, it was simply done on behalf of a

22  colleague, so to speak.

23         THE COURT:  But see, I don't understand that because

24  there's no information about Mr. Santora or anything else.  I

25  believe that Mr. Graziano's plea was before the magistrate

29

Proceedings

1    judge?

2              MR. DENNEHY:  It was.

3              MR. PARROTTA:  Yes, Judge Pollack.

4              MR. DENNEHY:  Judge Bloom, I think.

5              MR. PARROTTA:  Bloom.

6              THE COURT:  Were there other pleas before the

7    magistrate judge or was that the only one?

8              MR. DENNEHY:  I believe LaForte also took a plea

9    before the magistrate and I believe the balance of the

10   defendants took pleas before Your Honor.  I recall two cases

11   outside of this courtroom.

12             MR. PARROTTA:  I recall on the conference day just

13   before our guilty plea you were starting a civil trial and you

14   had very limited availability, is what you indicated to us,

15   and that's why we -- it was farmed out.

16             THE COURT:  Have you reviewed those plea minutes,

17   counsel?

18             MR. PARROTTA:  No, I have not.

19             THE COURT:  Are you aware of any reason why, having

20   been there at the plea, why the Court should not accept

21   Mr. Graziano's plea before Magistrate Judge Bloom?

22             MR. PARROTTA:  No, I am not, Judge.

23             THE COURT:  So you were there?  You remember --

24             MR. PARROTTA:  Yes, I have notes.

25             THE COURT:  Mr. Dennehy, are you aware of any

Proceedings

30

1  reason --

2          MR. DENNEHY:  No.  I recall the allocution being

3  fairly sufficient.  There was an interruption in the tape; the

4  lights went out in the courthouse.

5          THE COURT:  I think it was all repeated, though.

6          MR. DENNEHY:  I wasn't sure what was captured the

7  second time, but I know Judge Bloom did it twice just to make

8  sure that nothing got missed.

9          MR. PARROTTA:  I recall that the magistrate was very

10  careful to start from the beginning once we were assured that

11  the audio was back on and we went through everything.

12          THE COURT:  All right.  There's only one minor issue

13  that I noted with the plea, and it dealt with specific

14  recitation of all the rights that he would be giving up.

15          The new federal rules -- they're not new, but the

16  most recent iteration of Rule 11 requires that a defendant be

17  advised that he has the right not only to cross examine

18  witnesses that the government produces, but also to have

19  subpoena power to bring witnesses in.  I'm not sure that that

20  was conveyed.

21          Mr. Graziano?

22          THE DEFENDANT:  Yes.

23          THE COURT:  When your -- you want to step up for a

24  moment -- just sit there.  Never mind.

25          THE DEFENDANT:  I can stand.

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Proceedings

1          THE COURT:  All right, just stand there.

2   Mr. Graziano, one of the -- one of the additional rights that

3   you would have if you went to trial, would be that you would

4   have the power, if you brought, if you wanted to, to bring

5   witnesses to the court to testify on your behalf.

6          In other words, you would have subpoena power.  So

7   if there was some witness out there that you thought would

8   testify on your behalf and would be helpful to you, your

9   lawyer could get a subpoena signed by the Court that would

10  make that person come to court.

11         Do you understand that?

12         THE DEFENDANT:  Yeah, sure.

13         THE COURT:  All right.

14         Understanding that you had that right, does that in

15  any way change your mind about the fact that you wanted to

16  plead guilty?

17         THE DEFENDANT:  No.

18         THE COURT:  You're sure?

19         THE DEFENDANT:  Yeah.  I --

20         MR. PARROTTA:  Let me explain it to him just one

21  moment.

22         THE DEFENDANT:  I'm confused with this whole thing.

23         MR. PARROTTA:  Let me explain it to you.  We don't

24  want any confusion.

25         (Conferring.)

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

                                                                    32
                              Proceedings

1              THE DEFENDANT:  Yes, I want to go forward.

2              THE COURT:  Mr. Graziano, I think your lawyer has

3    just given you an even fuller explanation of what I tried to

4    explain to you.  Is that correct?

5              THE DEFENDANT:  Yes.  Yes.

6              THE COURT:  Do you still want the Court to accept

7    your guilty plea?

8              THE DEFENDANT:  Yes.  Yes.

9              THE COURT:  Okay, thank you.

10             THE DEFENDANT:  Thank you.

11             THE COURT:  All right.  Well, I have reviewed the

12   plea minutes, and with that additional explanation I'll accept

13   the recommendation that the plea be accepted.

14             The Defendant Graziano was advised of all his other

15   constitutional rights.  It's clear that he understood them,

16   waived those rights, and there was a factual basis for the

17   plea.

18             All right, you want to provide this additional

19   information to the Court by August 6th, Mr. Dennehy?

20             MR. DENNEHY:  Yes, Your Honor.

21             THE COURT:  If there's any response by the

22   defendants to the added presentation, that should be provided

23   to the Court by August 13th.

24             MR. FISCHETTI:  Yes, Your Honor.

25             THE COURT:  And I want that as to all defendants --

                   CHARISSE KITT, CRI, CSR, RPR, FCRR
                        Official Court Reporter

Proceedings

1    Mr. Calabrese and --

2            MR. DENNEHY:  I understand.

3            THE COURT:  Calabrese and LaForte as well.

4            MR. PARROTTA:  August 13th for additional

5    information?

6            THE COURT:  No, no.  The government is going to

7    provide it by the sixth, you'll reply by the 13th.

8            MR. PARROTTA:  Thank you, Judge.

9            THE COURT:  And we'll -- Ms. Holley, is the 16th

10   available?

11           THE CLERK:  Yes, Judge.

12           MR. DENNEHY:  May I ask Your Honor for the next

13   week?  I'm out of state that whole week --

14           THE COURT:  I can't do the next week.

15           You're out of state from the 16th?

16           MR. DENNEHY:  From the 11th to the 18th.  Entire

17   family -- children, grandchildren, parents --

18           MR. PARROTTA:  I'm in the same position.  My family

19   will be at the Jersey Shore from August 4th for two weeks, but

20   I do come home to take a break from the family, and the 15 --

21   and the15 nieces and nephews.  I do come home usually Tuesday

22   morning.  I'll work like Wednesday and Thursday during those

23   two weeks, and then go back Thursday evening.

24           MR. FISCHETTI:  Your Honor, my position is I can't

25   believe Mr. Dennehy has grandchildren.  So we'll take any date

34

Proceedings

1   that's convenient to him.

2           THE COURT:  I'll put it down for August 20th at

3   9:30.

4           MR. DENNEHY:  Thank you, your Honor.

5           THE COURT:  And that should be also for

6   Mr. Calabrese and Mr. LaForte.

7           MR. DENNEHY:  Their sentence date?

8           THE COURT:  Right.

9           MR. DENNEHY:  So we'll adjourn their --

10          THE COURT:  Advise them of the date that they need

11   to respond to your added submission as well.

12          MR. DENNEHY:  I will.

13          MR. PARROTTA:  Judge, I'll call Mr. Froccaro.  I

14   know he's on vacation.  I'll reach him.  I'll give him a heads

15   up.

16          THE COURT:  All right.  So the government is clear

17   on what the court needs?

18          MR. DENNEHY:  By August 6th, addendums to the PSRs

19   for all five defendants.

20          THE COURT:  Yup.

21          MR. FISCHETTI:  Your Honor, may I raise something?

22          On the date when we appear, will that be the date

23   for a Fatico Hearing, if there is one?  And if it is, my

24   request of the Court is that -- I'm kind of in an unusual

25   position, because I didn't believe, perhaps I'm wrong, that

Proceedings

1    that's convenient to him.

2              THE COURT:  I'll put it down for August 20th at

3    9:30.

4              MR. DENNEHY:  Thank you, your Honor.

5              THE COURT:  And that should be also for

6    Mr. Calabrese and Mr. LaForte.

7              MR. DENNEHY:  Their sentence date?

8              THE COURT:  Right.

9              MR. DENNEHY:  So we'll adjourn their --

10             THE COURT:  Advise them of the date that they need

11   to respond to your added submission as well.

12             MR. DENNEHY:  I will.

13             MR. PARROTTA:  Judge, I'll call Mr. Froccaro.  I

14   know he's on vacation.  I'll reach him.  I'll give him a heads

15   up.

16             THE COURT:  All right.  So the government is clear

17   on what the court needs?

18             MR. DENNEHY:  By August 6th, addendums to the PSRs

19   for all five defendants.

20             THE COURT:  Yup.

21             MR. FISCHETTI:  Your Honor, may I raise something?

22             On the date when we appear, will that be the date

23   for a Fatico Hearing, if there is one?  And if it is, my

24   request of the Court is that -- I'm kind of in an unusual

25   position, because I didn't believe, perhaps I'm wrong, that

Proceedings

1    the government was going to offer any evidence of relevant

2    conduct or call any of these witnesses when we signed the plea

3    agreement and spoke to them.  Now perhaps they're in a

4    different posture and Your Honor is in a different posture --

5            THE COURT:  Well, no commitment was made to you --

6            MR. FISCHETTI:  None.  None.  None.  Absolutely

7    none.

8            THE COURT:  Okay.

9            MR. FISCHETTI:  I agreed to that.  But if there is

10   going to be, the government saying that he continued in actual

11   conduct during that period of time, other than just being in

12   the enterprise with Floridia, Pagan, the marijuana case charge

13   and the gambling charge, then I'm going to want a

14   Fatico Hearing.

15           If I had a Fatico Hearing, I would like to have and

16   I think I'm entitled to, the 3500 material; any material that

17   the government has on the witnesses they intend to call.

18           THE COURT:  Well, we'll address all those issues --

19   I don't think we'll be going forward with the Fatico Hearing

20   on the 20th.

21           MR. FISCHETTI:  May I just make a statement on the

22   record for Mr. Dennehy?

23           I understand that during a Fatico Hearing the

24   government can offer hearsay evidence.  My position is going

25   to be, and we'll address it then, that in the event the

CHARISSE KITT, CRI, CSR, RPR, FCRR
Official Court Reporter

Proceedings

1    government is going to present this relevant conduct and Your

2    Honor grants me a Fatico Hearing, I want the witnesses

3    there -- Mr. Floridia and Mr. Pagan.  The government doesn't

4    intend to call them, but I would tell him right now I intend

5    to subpoena them.

6                 THE COURT:  Okay.

7                 MR. FISCHETTI:  Thank you, Your Honor.

8                 MR. PARROTTA:  Judge, one other issue.

9                 The -- Mr. Fischetti, I think, may join in this.

10                 This case is nine months old and we thought most of

11    our work would be done today, but there's going to be a month

12    or so of work.  And visiting my client at MDC last week, last

13    Wednesday I went there at like 8:30 in the morning and

14    Mr. Fischetti's colleague was about ten minutes before me -- I

15    guess the early bird catches the worm.  But I was locked out.

16    I couldn't see Mr. Graziano the rest of the day.

17                 These separation, they're very problematic for us

18    and there's still more work to be done.  And it's been a long

19    time, Judge.  I know the government made some type of

20    boilerplate assertion that in the past Bonanno individuals

21    have done improper things while incarcerated.  But it never

22    was specifically addressed to any of our clients.  And it's --

23    it's becoming very cumbersome for the attorneys and for the

24    clients also.  They have a tough time moving around.

25                 My client needs to go to the infirmary for insulin

Proceedings

1   testing and his insulin injection, and it's hard for him to

2   get there properly at the right time.  He has to be tested and

3   his insulin has to be injected at proper times, and he's had

4   tough situations in the last six months where his sugar is

5   through the roof and he seeks medical attention.  It's just

6   difficult.  And I -- there's no specific assertion that I've

7   ever heard on this case why the separation should remain in

8   effect, and I'm going to ask you to consider that, Judge.

9               MR. FISCHETTI:  One last thing, Judge.

10              Mr. Graziano for Mr. Parrotta were speaking on

11  Friday.  I went down to see Mr. Badalamenti with my partner,

12  Ms. Malgeri, and we were locked out for an hour and a half

13  because we were told Mr. Graziano, I believe, had a social

14  visit that day and no one there would confirm that the visit

15  was over and he was back in the unit.  So before we saw

16  Mr. Badalamenti, we spent two hours down there before he came

17  down.

18              So it's a difficult time for us.  I was going to

19  make this argument, and I have it written down, today after

20  sentencing, thinking that we were going to be sentenced.  I

21  spoke to Mr. Dennehy about this.  He didn't agree to anything,

22  but I told him we were going to make the application to

23  reduce -- to withdraw the separation order after sentencing.

24              But now that we're not going to be sentenced, I'm

25  going to have to see Mr. Badalamenti on the basis that we may

Proceedings

38

1    have a Fatico Hearing, and it's very difficult because of the

2    social visits, because of going to the infirmary.  With all

3    these defendants I would join in an application.

4              MR. PARROTTA:  And just one other thing, Your Honor.

5              Our clients could be directed or admonished.

6    They're here today.  And Mr. Santora, who is also

7    incarcerated, separated, not here today, but if anything

8    improper that they would do certainly would be at their own

9    peril; they pled guilty.  They have a wide range of sentencing

10   options that they're well aware of from the high one to the

11   low one.

12             They're going to be sentenced August 20th.  They

13   would certainly -- if anything improper occurred, they would

14   certainly be doing that at their own peril, if the Court was

15   informed of that prior to August 20th.

16             THE COURT:  Haven't we discussed this in the past?

17             MR. FISCHETTI:  We have, Judge, and we tried to work

18   it out.

19             THE COURT:  I asked you to work things out.

20             MR. FISCHETTI:  I wrote a letter, Judge, and they

21   wrote a letter back.  It just doesn't seem to work because of

22   the visits to the infirmary, things of that nature that can't

23   be controlled, and the waiting time is extraordinary, if we

24   get there at the wrong time.  We did address it.  I wrote on

25   it, and they wrote back.

Proceedings

1          THE COURT:  I don't think there was any application

2    pending before the Court, before me on this issue.

3          MR. FISCHETTI:  There was, Judge, I made an

4    application.

5          THE COURT:  No.  No.  I think I told -- my memory is

6    I told you to put it in writing and support it, and I don't

7    remember getting anything.

8          MR. FISCHETTI:  I did send it to Your Honor.

9          THE COURT:  I don't -- so all of this time you all

10   have been waiting for a ruling from me on --

11         MR. FISCHETTI:  No.  No.  I -- I addressed the

12   problem to Your Honor.  Your Honor -- well, we had a hearing

13   on it, or a meeting on it, and Your Honor told me, with

14   Ms. Argentieri, to try and work it out the best we can.

15             In other words, if he's got a visiting day, a social

16   visit, we would come another day.  But it just hasn't worked

17   out because of the visits to the infirmary, visits to the

18   commissary, that we can't do it.

19         THE COURT:  Mr. Dennehy?

20         MR. DENNEHY:  Your honor, I wasn't party to any of

21   this, but certainly it's my responsibility now.  And between

22   Mr. Graziano and Mr. Badalamenti, I certainly, if one of them

23   wants to go to MCC, that certainly would eliminate the problem

24   that's currently before the Court.

25         MR. FISCHETTI:  I hadn't considered that, Your

Proceedings

1    Honor.  But to transfer him now, with all his property and

2    have him take --

3              MR. DENNEHY:  Well, they have to decide what they

4    want.

5              MR. FISCHETTI:  -- is an extreme measure.

6              MR. DENNEHY:  That would certainly alleviate the

7    problem with these two lawyers going to see their clients in

8    the next two weeks preparing for a Fatico Hearing, if one is

9    in one jail and the other is in another jail.

10             THE COURT:  I don't know what the facility --

11             MR. DENNEHY:  I would certainly make that request,

12   if they asked me to do it.

13             THE COURT:  Do you want Mr. Dennehy to make that

14   request?

15             MR. FISCHETTI:  I don't know, Judge.  I would have

16   to talk to my client about that.

17             THE COURT:  Well, you all continue to discuss it.

18             MR. FISCHETTI:  All right.

19             THE COURT:  My understanding is it's a problem with

20   the prison officials.  It's not just the United States that's

21   involved in this, but it's a problem with the prison

22   officials, concerns about security when all of the people are

23   alleged to be members of a single organized crime family, that

24   that raises security concerns within the prison and that's why

25   what I think has been discussed before and I think that's why

Proceedings

1   we had that discussion, to try and work things out.

2          MR. FISCHETTI:  We did.

3          THE COURT:  And apparently, you know, it's been

4   worked --

5          MR. FISCHETTI:  Judge, we'll live with it.

6          MR. PARROTTA:  We're in the home stretch.

7          THE COURT:  Nobody wants to go to MDC.

8          MR. DENNEHY:  MCC.

9          MR. PARROTTA:  They're settled there.  They have

10  commissary --

11         THE COURT:  Okay.

12         MR. FISCHETTI:  Last thing, Judge.  Before you

13  leave, would Your Honor most respectfully ask the government

14  to provide the grand jury minutes?  There's no reason why we

15  shouldn't have that, especially if I may have a

16  Fatico Hearing.

17         THE COURT:  I don't believe you said anything --

18         MR. FISCHETTI:  He hasn't responded to my request.

19         THE COURT:  What's your position?  Do you care?  Do

20  you want to give them to him or do you want to indicate why --

21         MR. DENNEHY:  There's no legal basis why they're

22  entitled to those minutes, and I oppose it; I object to it.

23  It's not proper.  And I will do what I am directed by the

24  Court, which is to plant these presentence reports, to give

25  the information that's necessary to Your Honor.

42

Proceedings

1          MR. FISCHETTI:  Your Honor can direct them.

2          THE COURT:  Can I really do that?

3          MR. FISCHETTI:  Yes, Judge.  You're an Article III

4     Judge.

5          THE COURT:  Wow, I'm glad that I have some power

6     around here.  I recognize that I can direct him.  I don't know

7     that an adequate basis has been provided for the Court to do

8     that, in light of the government's objection.  If after you

9     get the additional information from the government you think

10    that --

11         MR. FISCHETTI:  All right --

12         THE COURT:  -- you can form a legal argument that

13    suggests you would be entitled to the grand jury minutes, I'd

14    be happy to hear it.  Since you're not making the claim of

15    double jeopardy and everything that we've discussed today,

16    including the government's recognition that it -- the conduct

17    to which he allocuted comes within the -- rather, the conduct

18    that he certainly allocuted to before Judge Garaufis is within

19    the confines of this conspiracy and the Court can give

20    consideration to the fact that at least a portion of this

21    conspiracy he has served a period of time, I don't know the

22    point.  But if you read over this, you have a point, I will be

23    able to consider it.

24         MR. FISCHETTI:  Thank you.  Thank you, ma'am.

25         MR. PARROTTA:  Thank you, Judge.

Proceedings

43

1          MR. ROSEN:  Thank you, Judge.

2          MR. DENNEHY:  Thank you, Judge.

3          (Adjourned.)